# Sheaffer *versus* Sheaffer.

*Entry for Condition broken, when necessary.— What is equivalent to an .Entry for this purpose.*

Where there is a breach on the part of a lessee of the conditions contained in a lease, an entry by the lessor is not required by the laws of Pennsylvania, to complete the forfeiture. The rule on this subject in England and in New York, has not been adopted in this state; especially where the lease or agreement is executory and contemplates a concurrent possession by the parties.

ERROR to the Common Pleas of *Armstrong county.*

This was an action of ejectment, brought by John Sheaffer against his brother Charles Sheaffer, to recover 106 acres of land in Pine township, Armstrong county. Both parties claimed under their father George D. Sheaffer, deceased. The plaintiff showed a regular chain of title from the Commonwealth down, vesting the title to the land in dispute in George D. Sheaffer, on the 7th day of March 1830. That George D. Sheaffer took possession of the land about the date of his title, and continued therein

[Sheaffer *v.* Sheaffer.]

until about January 1855; and that on the 26th January 1855, he made his last will and testament, devising the land in dispute to John Sheaffer, the plaintiff, and his heirs and assigns, in fee simple; that he died in September 1855, and that his will was duly proved and registered in Armstrong county, the 11th day of September 1855.

None of these facts were disputed by the defendant, but in defence, he set up a contract between himself and his father, George D. Sheaffer, dated 20th November 1848, which relates to the same land, and was an agreement to let it to the defendant for the life of said G. D. Sheaffer and his wife, on condition that said Charles would maintain and support them during their lives, and the life of the survivor, with remainder in fee, on condition that he performed the agreement, &c.

In answer to this, the plaintiff alleged, and offered evidence to prove, that the defendant had failed to perform the condition of the lease, and had therefore forfeited his right under said contract.

The evidence established these facts: That at the making of the contract of the 20th November 1848, George D. Sheaffer was in actual possession of the land in dispute. After which Charles moved on the farm, and that he and his father continued the joint occupancy of the farm in different houses, until his father moved off in January 1855. That, soon after Charles moved to the farm, difficulties and disputes arose between him and his father, in regard to the manner in which he provided for the old people. These disputes continued until the old man left, in January 1855, giving as his reason for so doing, the failure and neglect of Charles to provide for him and his wife. The court below took the case from the consideration of the jury, and charged, that whether the conditions of the lease or agreement were performed, was a question for them. If not, as this was a lease upon condition, the non-performance of the conditions would operate as a forfeiture, if the lessor elected to take advantage of it. That the lessor was not bound to do this, and if not, the right of the tenant continued. If the lessor intended to take advantage of the breach of condition he must do so promptly, and re-enter and declare the forfeiture. That forfeitures are not favoured; and as there was no evidence of any entry, the plaintiff could not recover.

Under this instruction the jury found for the defendant; and judgment being entered on the verdict the plaintiff sued out this writ, assigning here—

1. The court erred in taking the case from the jury, and deciding that there was "no evidence of any entry or demand for the forfeiture."

[Sheaffer *v.* Sheaffer.]

2. The court erred in deciding that the said George D. Sheaffer must re-enter promptly and declare the forfeiture, and that an entry or declaration of forfeiture was necessary in this case to enable the plaintiff to recover.

*Golden & Fulton*, for plaintiff, cited and relied on Hamilton *v.* Elliott, 5 S. & R. 386; 2 Bl. Com. 209; 3 Bl. Com. 174, 175; McKissick *v.* Pickles, 4 Harris 140; 1 Salk. 250; Ld. Raymond 750; 3 Burr. 1897; 1 Johns. Cases 125.

*J. Boggs*, for defendant, argued that there must be a re-entry for a forfeiture by reason of non-payment of rent: citing Com. Dig. "Rent," D. 3, A. 5; 18 Vin. Abr. 482; 8 B. Abr. 480, "Rent" I.; Id. O.; Co. Litt. 203; 11 Rep. 117; 8 B. Abr. 481, 487; 2 Roll. Abr. 428; 16 Johns. 222; McCormick *v.* Connell, 6 S. & R. 151; Stover *v.* Lessee of Whitmore, 6 Binn. 419; Rutter *v.* Newman, 8 Watts 51.

The opinion of the court was delivered, January 7th 1861, by

WOODWARD, J.—The written agreement of the 20th November 1848, between George Sheaffer and his son Charles, was a grant by the father to the son of a leasehold interest in the father's farm, for the lives of George Sheaffer and his wife, with remainder to Charles in fee simple, on condition that he should take possession of the farm within convenient time; should cultivate it in a proper manner during the lives of his parents; should deliver in the bushel one-third of all the grain raised, excepting only the first three crops on any new land he might clear, and after the death of the parents should pay to their other heirs five hundred and twenty-five dollars, less any amount that sickness or other unforeseen event might require him to depend for his parents' support over and above the one-third of the grain. In other words, Charles was to pay an annual rental of one-third of the crops, and if this should prove insufficient for the support of the parents, was to furnish the surplus, and charge it against the money to be paid to the heirs.

Charles went into possession soon after the lease was made, and continued to cultivate the farm till the father's death. His father moved off in January 1855, and died at his son John's residence the succeeding September, having first made his will, wherein he devised the farm to John in fee. This action of ejectment was brought by John to recover the farm from Charles, on the ground that the conditions had been broken, and his estate under the agreement of November 1848 forfeited. The court ruled that if there was breach of condition, it was the duty of the landlord to enter promptly and declare the forfeiture, and as there was no evidence of any entry or demand for the forfeiture, they held that the plaintiff could not recover.

[Sheaffer *v.* Sheaffer.]

We find in the record no evidence of a formal entry as for condition broken, and, therefore, the only question which is raised by this writ of error for our consideration is, whether such entry was necessary. It is important to bear in mind, that that is the precise question in the case, because some of the arguments and authorities of counsel relate to quite another question, to wit, how far the receipt of rent by the landlord after breach of condition by his tenant shall be considered a waiver of the forfeiture. No question was submitted to the jury touching the receipt and payment of rent; nothing was decided in the court below on that head, and, therefore, that subject is not here for review. Nor is the question here of waiver by other means than the receipt of rent, unless it be said that waiver may be implied from failure to enter for the purpose of taking advantage of an incurred forfeiture. It may be true, that a landlord who does not promptly enter for condition broken thereby waives the breach, but this is only another way of saying that without entry there is no forfeiture. Is that proposition true?

In Hamilton *v.* Elliot, 5 S. & R. 375, there was a conveyance of premises in the city of Philadelphia by Edward Almond and wife to Hugh Hamilton in consideration of a ground-rent of ten dollars, and of Hamilton's agreement to erect a small house on the premises for Almond and wife to live in during their joint lives, and the life of the survivor. Hamilton erected no house, and Almond, who remained in possession in an old house, made no declaration of forfeiture, but conveyed the premises before his death to Elliot, who brought the ejectment. It was admitted to be an estate held on condition, but it was argued for Hamilton, that as no time was fixed for the erection of the house, he had his lifetime in which to build it, and at any rate, even if there had been a breach of this condition, there had been no re-entry by Almond, and, therefore, no estate had revested in him to pass by his deed to Elliot.

Judge Gibson, in answer to the first proposition, showed from the tenor of the papers that the house was to have been built within a reasonable time, and in reply to the second he said that neither entry nor claim by Almond was necessary, for he was already lawfully in possession. And he quoted 1 Inst. 218 B. for the proposition that if a man grant a rent-charge in fee out of his land, the rent shall be extinct on a breach of the condition without entry or claim, for he is in possession, and need make no claim on his own land. And as to the non-entry of Elliot, it was held that as assignee of the feoffor, he had no right to enter for condition broken; that this was a privilege only of the feoffor or his heir.

In Kenrick *v.* Smick, 7 W. & S. 45, the paper under which

[Sheaffer v. Sheaffer.]

the defendant claimed, contained a stipulation that on breach of condition it should become null and void; there were several failures to pay the ground-rent provided for, and there was notice given to the tenant of the forfeiture, but the court below held that a forfeiture could not take place without a re-entry, which had not been made.

When the case came into this court, the defendants were treated as holding under an executory agreement, and as asserting a mere equity which arose out of all the circumstances of the case, and the question was said to be whether a chancellor surveying the whole case would now decree them a conveyance under the agreement, and on what terms. Judge Sergeant, referring himself to Pennant's Case, 3 Rep. 64, and to Comyn on Land and Ten. 327, said, the law seems to be that on a lease for years with such a condition, if the condition be broken the interest of the lessee would be *ipso facto* void by the breach without any re-entry; and where the lease is made *ipso facto* void by the breach, then no subsequent recognition of the tenancy can be set up. In any event, added this most able judge, the plaintiff having the legal title, and the defendants only an equity under articles, in order to defeat the plaintiff they must show, that they are entitled now to call for a conveyance on settling an account, and paying up all arrears of purchase-money and interest or rents.

These cases are in strong contrast with the modern English decisions, which do establish beyond a peradventure, that where the lease provides that the estate shall become null and void, or that the landlord may re-enter on breach of condition by the tenant, yet that it is not void at all events, but voidable only if the landlord thinks proper to re-enter, his right to do which he may waive. Hence re-entry becomes necessary to express his option to claim the forfeiture, and if he do not enter but receive rent that accrues after the breach, or performs any other act unequivocally evincive of his intention to continue the lease, he waives the breach and confirms the estate: Doe v. Banks, 4 B. & A. 401; Rede v. Farr, 6 M. & S. 121; Arnsby v. Woodward, 6 B. & C. 510; Doe v. Birch, 1 M. & W. 402; Roberts v. Davy, 4 B. & C. 664; Jones v. Carter, 15 M. & W. 724.

The doctrine of these cases has been followed in New York, Clark v. Jones, 1 Denio 577; in North Carolina, Phillips v. Chesson, 12 Iredell 194; and, perhaps, in most of our sister states.

And if such is the law of the lease that stipulates in terms that a breach of condition shall render it null and void, much more would it seem to be of the lease, which, like the one before us, contains no such stipulation. If re-entry be essential to a

1 WR.—34

[Sheaffer *v.* Sheaffer.]

complete forfeiture in the one case, much more might it be argued would re-entry be essential to forfeiture in the other case.

Yet the law of this court is not so.   That want of re-entry is excused where the lessor has a lawful possession, is established by the case of Elliot *v.* Hamilton, already referred to.   And although the lease before us is silent on this subject of the lessor's possession, it is impossible to doubt that the understanding of the parties was, that George Sheaffer and his wife were to continue to live on the farm during their lives; and, therefore, that such must be the legal construction of the paper.   If such were not the meaning of the parties, how are we to account for the continued possession of the parents from the date of the lease in November 1848, up to January 1855?   We are not told that the mother died in that interval, though it *is* probable she did; but the father did not go to John's house to live until January 1855, and the allegation is that even that removal was not for the purpose of surrendering the possession, but because he could not obtain the support from Charles to which he was entitled.

If the parties contemplated a concurrent possession of the farm for purposes of residence, though for purposes of culture Charles was to have the exclusive possession, and if the father, in pursuance of this intention, remained in actual possession for more than six years, and then left only to seek the support which he was entitled to demand, but could not obtain, at the hands of Charles, he must be considered as in lawful possession up to the time of his death.   For, to treat him as out of possession would be to give Charles the benefit of his own wrong.   If the question were one under the Statute of Limitations, Charles would be entitled to the benefit of having driven his father away, for the merit of a possession under the statute *is* that it is adverse and hostile, but the possession is in question here for a very different purpose.   A man does not necessarily lose possession of his farm by going to reside with a son for a few months.   We will not assume, in the absence of evidence, that old Mr. Sheaffer did. And if the fact be, of which we have no adequate evidence before us, that he was compelled to remove by stress of age and infirmities, unprovided for by Charles, why then we will consider it a merely temporary removal, and not give Charles the advantage which might result to him from a lawful and voluntary surrender of possession on the part of his father.

For these reasons we consider the ruling in Elliot and Hamilton applicable here.   There, to be sure, the continued possession of the grantor was expressly provided for—here it is only impliedly provided for, but an inevitable implication from a written instrument is as much a part of the instrument as an express provision. The word "support" in the lease may require construction also.

[Sheaffer v. Sheaffer.]

That it contemplated something beyond the third of the grain, even to the amount of $525, is very clear, and that it included whatever attentions might become necessary by reason of sickness or other unforeseen events is not to be doubted. And that support was to be rendered to them living on the farm. Support of his parents, so understood, was one of the conditions of Charles's tenure, and if there was breach of this condition, how could the father declare it more expressively than by going to another son's to obtain it? It was the equivalent of an entry for breach of condition, where, owing to the circumstances of the case, no entry was necessary.

Can the case be treated after the manner of Kenrick v. Smick, before referred to? This depends on the question whether the agreement of November 1848 was an executory agreement, and Judge Sergeant tells us in the beginning of his opinion in the above case, that it has been settled by a variety of cases that, whether an informal instrument transferring an interest in real estate shall be construed a conveyance, or only an agreement for a conveyance, must depend, not on any particular words or phrases that are found in it, but on the intentions of the parties as collected from the instrument itself, and where that is doubtful, from the circumstances attending it. See also a discussion of the subject in Stewart's Executor v. Lang, ante, 201.

We have no doubt that the parties intended their contract to be what they called it, an "article of agreement," and not an executed deed, nor can we doubt that the authorities in our own books would require us to hold this an executory, and not an executed instrument.

Then the above case of Kenrick and Smick applies, and instead of holding his father to the necessity of a re-entry, Charles will find himself obliged to establish his equities by proving substantial performance of all the conditions under which he went into possession of the farm. Unless he can do this, the legal title which is in John must prevail.

It thus appears that the proposition of the learned judge, which ruled the case below, though supported by the modern English and some American cases, will not bear the test of either of the above-named Pennsylvania authorities. Those authorities are well grounded in the ancient law; are supported by sound reasons, and are worthy to be respected. It is our duty to follow them. They require us to say that there was error in holding the plaintiff not entitled to recover, because George Sheaffer had not entered or demanded forfeiture for the alleged breach of condition.

But let it be observed this is all we decide. Whilst we have assumed certain states of fact in discussing the application of

[Sheaffer *v.* Sheaffer.]

legal principles, we do not mean to be understood as intimating that any breach of condition was committed by Charles, or if any, that it was waived by his father. We leave both these questions open, for there is nothing on the record to decide them.

The judgment is reversed, and a *venire facias de novo* awarded.