## COHN v. CLARK.

No. 4732.   Opinion Filed June 29, 1915.

(150 Pac. 467.)

1. **JUSTICES OF THE PEACE—Appearance—Appeal.** Where no valid service of process is had upon the defendant in the justice of the peace court, and a motion to quash service filed by him in that court is overruled and judgment goes against him, and he files a bond for appeal to the county or district court, which is duly approved, by taking the appeal and filing the appeal bond, he waives all defects in the service of process in the justice court, and a motion made by him in the appellate court to quash the service of process is properly overruled.

2. **CONTINUANCE—Sickness of Defendant—Probability of Recovery.** Defendant made a motion for continuance upon the ground that the defendant was sick and unable to attend trial. It appears from the motion that the defendant had been sick in a distant state for about a year. **Held,** that in the absence of a showing that there was a probability of defendant being able to attend court in a reasonable time, it was not error to refuse the continuance.

3. **MINES AND MINERALS—Oil Lease—Construction—Surrender Clause.** An oil lease provided that the lessee should commence operations in drilling for oil by January 1, 1910, or thereafter pay to the lessor $1 per acre per annum until a well was drilled, or the lease thereafter should be null and void. **Held,** that upon

a failure to begin operations by drilling for oil, the lessor was entitled to the stipulated rental until a well was drilled or until the lease was terminated, or canceled, under the surrender clause in the contract.

4. SAME—A provision, forfeiting a lease on failure of the lessee to fulfill the terms of the contract, is for the benefit of the lessor only, and he alone can take advantage of the same, unless there is an expressed stipulation in the contract that the lease shall become null and void, unless the lessee shall either drill within a certain time or pay the rental, or words of similar import.

5. SAME—Sufficiency of Evidence—Damages for Delay. Evidence examined, and held, to support the verdict.

(Syllabus by Mathews, C.)

*Error from County Court, Rogers County;*
*H. Tom Kight, Judge.*

Action by I. G. Clark against Isaac Cohn. Judgment for the plaintiff in the county court on appeal from a justice of the peace, and defendant brings error. Affirmed.

*J. I. Howard* and *C. B. Holtzendorff*, for plaintiff in error.

*J. W. Swarts,* for defendant in error.

Opinion by MATHEWS, C. There was an abortive attempt to commence this action in the justice of the peace court. It appears from the record that a garnishment summons was issued, but it shows no service thereof, and has no indorsement of any kind, except it appears that it was filed in the county court on April 30, 1912. No garnishment affidavit appears of record. On the 19th of February, 1912, a summons for the defendant was issued, and it appears that this summons was published three times in a local paper, no affidavit for publication appearing of record. There appears to have been no ruling upon defendant's motion to quash service of summons. We presume the justice must have held it to be frivolous, as the next act of the court shows him entering a judgment

against the defendant for $140. From this judgment the defendant filed his bond for appeal to the county court, where defendant again presented his motion to quash service of summons, which was overruled. He then filed motion for a continuance, which was refused. Trial was had, judgment was against him, and he is here upon appeal.

The defendant insists that the county court erred in overruling his motion to quash, and was without jurisdiction of said cause. It goes without saying that the judgment rendered by the justice of the peace was void. There was no service upon the defendant, the issuance of the garnishment summons was not based upon an affidavit, and does not appear to have been served upon anybody. **The only way to account for the entering of the judgment** by the justice is that it was done *vi et armis*. Everything **done in the justice of the peace court was "without form and void,"** except the appeal bond was in legal form and duly filed by the defendant, and that appeal bond, like charity, covered a multitude of faults.

In the case of *Gulf Pipe Line Co. v. Vanderberg*, 28 Okla. 637, 115 Pac. 782, 34 L. R. A. (N. S.) 661, Ann. Cas. 1912D, 407, appears the following:

"A defendant in an action in a justice court upon whom a defective service of process has been made, although he appears specially for the purpose of challenging the service and the court's jurisdiction of his person, and thereafter, without waiving his special appearance, proceeds to the trial upon the merits, if he appeals from a judgment of the justice court against him to the county court, where a trial *de novo* upon questions both of law and fact must be had, by taking the appeal he waives all irregularities in the issuance and service of summons in the justice court; and he cannot thereafter he heard to

question the same, or to deny the appellate court's jurisdiction of his person."

It is true in the foregoing case the service of process was termed by the court as defective, yet the same principle is involved should there be no service at all, as in the instant case; for the filing of an appeal bond, duly approved, constitutes an appearance; the prior service thereby becoming immaterial, because a party to a suit can appear voluntarily. *Fowler v. Fowler*, 15 Okla. 529, 82 Pac. 923; *McCord-Collins Mer. Co. v. Dodson*, 32 Okla. 561, 121 Pac. 1085; *Deming Investment Co. v. Love*, 31 Okla. 146, 120 Pac. 635; *Doggett v. Atchison, T. & S. F. Ry. Co.*, 31 Okla. 177, 120 Pac. 654; *Gulf Pipe Line Co. v. Vanderberg*, 28 Okla. 637, 115 Pac. 782, 34 L. R. A. (N. S.) 661, Ann. Cas. 1912D, 407.

3. Defendant next complains of the ruling of the court in denying his motion for a continuance. The application was based upon the fact that the defendant was absent from the state and was seriously sick in the state of New York. The defendant cites *McMahan v. Norick*, 12 Okla. 125, 69 Pac. 1047, as a case in point, wherein this court held that the trial court had abused its discretion in refusing the continuance, it appearing therein that the plaintiff was absent from court, being sick. In that case a proper affidavit was filed, setting up that the plaintiff was a material witness, setting out the facts she would testify to, and stating that the facts could not be proven by any other witness, and that counsel could not proceed to trial safely without the presence of the plaintiff to aid him in presenting the case, the affidavit fully covering the statutory grounds for continuance. In the case at bar there was filed an affidavit only of defendant's attending physician to the effect that

defendant was sick in New York and had been so for a year last past. The appeal was filed in the county court April 30, 1912, and the motion for a continuance was filed September 17, 1912. It appears from the statement, of defendant's physician he had been sick about six months before the appeal was filed, and was still sick when the case was called for trial, about six months afterwards. Under these conditions we do not think the court abused his discretion in refusing the continuance. In cases of continued sickness of one of the parties to the case, without any showing that there is a probability of a recovery in a reasonable time so as to enable the party to attend the trial, the court should overrule a motion for continuance based upon these grounds. In such cases the attorney representing the party should take his depositions, if his evidence is desired.

4. We will next consider defendant's claim that the judgment is contrary to law and the evidence. This was an action to recover upon a contract for an oil lease made by plaintiff to defendant, and in order to properly present the question, it will be necessary to set out certain terms of the lease contract which are:

"1st. Second party agrees to commence operations on said premises within, on or before Jan. 1st, 1910, from this date, or thereafter pay to the first party one dollar per acre per annum annually until a well is drilled, or the property hereby granted is conveyed to the first party."

"6th. Second party may at any time remove all his property and reconvey the premises hereby granted and thereupon this instrument shall be null and void."

Plaintiff based his suit upon the first clause of the lease contract, wherein defendant agreed to pay him $1 per acre per annum until a well was drilled or the prop-

erty reconveyed.    The defendant meets this claim with
the following contentions:

"We submit that the lease relied upon did not obli-
gate the lessee to drill or pay rentals; the lease was never
recorded, and the lessee was never in possession of the
leased premises.    This was nothing more than a mere
optional right of entry, and did not bind the lessee to
drill or pay rents; it conveyed nothing to the lessee, ex-
cept the right to explore for oil or gas under the terms
of the contract"

—and cites *Kolachy v. Galbreath et al.*, 26 Okla. 772, 110
Pac. 902, 38 L. R. A. (N. S.) 451, and a number of sim-
ilar decisions, as authorities.    *Frank Oil Co. v. Belleview
Gas & Oil Co.*, 129 Okla. 719, 119 Pac. 260, 43 L. R. A. (N.
S.) 487; *Ohio Oil Co. et al. v. Detamore*, 165 Ind. 243, 73
N. E. 906; *Backer v. Penn. Lubricating Co.*, 162 Fed, 627,
89 C. C. A. 419; *Deming Inv. Co. v. Lanham*, 36 Okla. 773,
130 Pac. 260, 44 L. R. A. (N. S.) 50; *Superior Oil & Gas
Co. v. Mehlin*, 25 Okla. 809, 108 Pac. 545, 138 Am. St.
Rep. 942.

The cases cited by defendant from our own court
are all equitable actions, wherein the enforcement of
specific performance is sought to compel a conveyance of
the lease as promised in the contract, and are not to be
confused with cases of the kind at bar, which is a law
action, pure and simple.    In the cases cited by defendant,
which are not in point here, our courts therein have uni-
formly refused to decree specific performance upon equit-
able grounds therein set out, but the case at bar being a
law action, we are not concerned with the equity phase
of the case, and the rules of the law court and not of
equity will have to be our guide in construing the con-
tract herein sued on.

In the contract under consideration, it will be presumed that the parties thereto worded the same so that it expressed the actual contract which they intended to make, and it is not for this court, by judicial interpretation, to add to and take from the same, but to construe it as it actually is, and we have no power to relieve either therefrom, even though we might conclude that its terms are greatly to the advantage of one and much to the detriment of the other, in the absence of fraud or mistake, neither of which occurs herein, either in the pleadings or in the proof. We have no authority in actions at law, as in the case at bar, to inquire whether the contract is fair and equitable, but can look only to the terms of the contract and construe the same according to the intendment of the parties, as far as the same can be arrived at by placing the commonly accepted judicial construction and acceptation of the language used therein. The lease under consideration starts with the statement that "the consideration is $1.00 and covenants and agreements therein contained," and in the first clause of the lease it is stipulated:

"1st. Second party agrees to commence operations on said premises within, on or before January 1st, 1910, from this date, or thereafter to pay to the first party, one dollar per acre per annum annually until a well is drilled, or the property hereby granted is conveyed to the first party."

—and then the sixth paragraph is:

"6th. Second party may at any time remove all his property and reconvey the premises hereby granted and thereupon this instrument shall be null and void."

Plaintiff signed a five-year oil lease, and in consideration therefor defendant agreed to commence operations on the premises by January 1, 1910, or in lieu thereof to

do one of two things: (1) To pay the lessor $1 per acre per annum until a well was drilled; or (2) to reconvey the premises. At the outset we are confronted with some difficulty in arriving at a definite determination as to the exact meaning of the last clause in section 1 of the contract as above set out, the clause referred to being as follows: "Or the property hereby granted is conveyed to the first party." It can readily be seen that this clause is vague and indefinite as to whether it means that, in default upon the part of the lessee in beginning operations on the leased premises or, in lieu thereof, in paying the $1 per acre, the lease is thereby automatically released or reconveyed, or whether it must be construed to mean that in case of default, in order to relieve himself of further liability, he must in fact, execute an actual reconveyance of the leased property.

Although the well-recognized rule is that the terms of a lease are to be construed most strongly against the lessee, in this instance we will reverse the rule, and, as far as this case is concerned, we will treat this clause as meaning that, upon the failure of the lessee to begin operations or to pay rent as the contract provides, that within itself works a forfeiture, not requiring the lessee to execute a conveyance in fact, as far as the forfeiture clause is concerned. So far as we have been able to learn this is the first time this court has been called upon to pass upon an oil lease contract worded as in this action, although, as stated before, numerous decisions have been rendered touching the equity side of such contracts, and lease contracts containing the "unless" clause, and in considering this case we are not unmindful of its great importance in the oil districts of this state, and that there are many leases in that section containing the same

provisions, or of similar import, and we realize the importance of giving the correct fixed construction of such lease contracts.

The lessee contends that, in order to relieve himself of liability under the contract, it was unnecessary for him to avail himself of the sixth provision therein, known as the surrender clause, and execute a reconveyance as provided in this clause, but that he was not bound in the contract to begin operations on the lease, or to pay rentals or to execute a reconveyance but that upon failure on his part to either begin operations or to pay the specified rentals as provided in the contract, *ipso facto*, there was a self-executing automatic release which relieved him of all liability. The lessor contends that, in the absence of an actual reconveyance of the leased premises as stipulated in the surrender clause, the lessee was bound, in case of failure to begin operations as the contract provided and within the time therein specified, to pay the rentals as set out in the contract, and that the forfeiture clause in the first paragraph of the contract is for the benefit of the lessor only, and that upon the failure to begin operations for oil or to pay the stipulated rentals, thereupon the lessor could either declare the lease forfeited or, in case he did not do so, could hold the lessee liable for the rental up to such time as the lessee might tender a release under the surrender clause or, in case of his failure to take advantage of the surrender clause, until the expiration of the lease term. If the lessee's contention be true, then we would meet the anomalous condition of a party profiting by his own breach or gaining advantage by his own wrong. Under such a contract the lessor binds his hands and gets nothing for the lease unless the pleasure of the lessee moves him

to action. Should we determine that a failure to pay the rentals stipulated, after a default in beginning operations, *ipso facto*, operates to release the lessee from all liability, why incumber the lease with the sixth paragraph, known as the surrender clause? If failure to pay rentals nullifies the lease automatically, then there is no use of the surrender clause at all. It would be useless to insert a surrender clause in a lease requiring the lessee to go to the trouble and expense of executing an actual reconveyance, when there is a provision in the lease for his advantage which is self-executing upon his failure to pay the rentals. We must construe this contract so as to give some effect and meaning to every part of the same. We are not permitted to say that the parties hereto have deliberately inserted a clause in this contract that is useless and unnecessary, when a fair and reasonable construction will give weight and effect to it, and, following this line, we conclude that if the surrender clause has been inserted in the contract for the benefit of the lessee, and affords him an easy and expeditious way of ridding himself of the contract and its liability, the forfeiture clause in paragraph 1 must have been inserted for the benefit of the lessor only. This construction will give both of the clauses the weight and effect that was reasonably intended for them, and gives both of the parties to the contract a means of protection and a way of relieving themselves of the contract. If we place the construction upon the contract as claimed by the lessee, we must conclude that the lessor has been so improvident as to execute a contract giving to the lessee two ways of ridding himself of the contract at his pleasure, while either was sufficient, and at the same time the lessor remains tied up at the pleasure of the lessee. Further, it

is a fair inference that it was intended in the contract that the lessee, to surrender the lease, should tender to the lessor a formal reconveyance of the leased premises, because these oil leases, to a certain extent, are a cloud upon the title to the real property and make it difficult tc pass title to a purchaser or to effect a lease to a new party while the first lease appears of record and in apparent force, and for this reason we believe that the forfeiture clause was for the benefit of the lessor only, while the surrender clause was for the benefit of the lessee.

Suits to collect the rentals upon oil lease contracts of similar import to the one under consideration have been a most prolific source of litigation in such oil producing states as West Virginia, Pennsylvania, Ohio, and Indiana, and from each of these states we find many well-considered cases holding that, in oil leases similar to the one in the case at bar, the forfeiture clause is for the benefit of the lessor only, and that he can either avail himself of it and end the lease, or he can waive the forfeiture and collect the rentals stipulated in the lease. We do not want to be understood as holding that parties may not contract that, in case of failure to commence operations or to pay rents, the lease *ipso facto* becomes null and void, and that the lessee is automatically relieved of liability, because all the cases thereon hold that where it is expressly stipulated that the lease shall become null and void at a certain time unless the lessee either drills, or in lieu thereof, pays a certain stipulated sum as rental, a failure to drill or pay the rentals automatically operates as a release from all liability, under the lease contract.

In the case of *Deming Inv. Co. v. Lonham,* 36 Okla. 773, 130 Pac. 260, 44 L. R. A. (N. S.) 50, our own court

had under consideration an oil lease contract which contained an expressed stipulation that the lease should be null and void unless the lessor should either drill a well or pay the rental, and the court properly held that under such an expressed contract, the lease became void upon the failure to drill or pay; the syllabus in said case being as follows:

"A clause in an oil and gas lease reading as follows: 'Provided, however, that if a well is not drilled on said premises, within one year from the date hereof, then this lease and agreement shall be null and void, unless the party of the second part, within sixty days from the beginning of each and every year after the expiration of the term above mentioned for the drilling of a well, shall pay a rental of $.25 per acre, until a well is drilled thereon or until this lease is cancelled, as herein provided'— does not obligate the lessee to pay rent for delay in commencing to drill for oil and gas, said grant in the lease amounting only to an option to the lessee to explore for oil and gas, and preventing the lessor, after receiving the consideration for the first year, from leasing to another during such time, and after receiving a second or subsequent payment from leasing to another, until such delay period had expired, the lessee having the option by continuing to pay such yearly payments to prevent the forfeiture of the lease."

The same proposition was before the court in the case of *Frank Oil Co. v. Belleview Gas & Oil Co.*, 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, and the forfeiture clause in this case was the same as the one in the case of *Deming Inv. Co. v. Lanham*, the syllabus on this subject being as follows:

"The lease contained the following provision: 'If no well is commenced on said premises within one year from this date, then this grant shall become null and void, unless second party shall pay to the first party eighty

($80.00) dollars for each year thereafter such completion is delayed, said rental to be paid quarterly in advance. * * * ' *Held,* that this provision did not bind the lessee to pay any rent for the land or for delay in commencing to operate for oil and gas. * * * "

The distinction between these two cases and the one at bar is easily drawn. Each of these cases has what is known as the "unless" clause, and the courts of all the states uniformly hold that such clause relieves the lessee of liability in case of forfeiture, but in the case at bar the forfeiture clause is wholly lacking in this feature.

We have made an exhaustive research, and with the single exception of the case of *Lowther Oil Co. v. Guffey,* 52 W. Va. 88, 43 S. E. 101, no reported case has been brought to our attention wherein the lessee has been automatically relieved of liability from a lease contract of the kind under consideration, except in those cases only where it is stipulated that the lease shall become null and void "unless" the lessor shall either drill within a certain time or pay the stipulated rentals. In this kind of lease contracts there seems to be a particular potency in the word "unless," because the courts of all the states have uniformly held that the forfeiture clause is for the benefit only of the lessor unless there has been a contract to the contrary, and it seems that the word "unless" so far has been the only word found capable of relieving the lessee from further liability. Of course we are not to be understood as holding that no other like word will suffice for this purpose, but simply state that we have not found a case where any other has sufficed.

We will next consider the cases which hold that, in the absence of a contract that the lease is terminated at a certain time unless the lessee either drills or pays ren-

tals, even though a forfeiture clause may be in the contract, yet the lessor only can avail himself of its provisions and can either declare the contract forfeited in case of its breach, or waive the forfeiture and sue for the rentals. Archer on Oil & Gas on this subject says:

"Section 1. Where an oil and gas lease provides for the payment of rental or commutation money for delay in explorations, and there is an express covenant to pay such rental or commutation, upon lessee's default in such payment the lessor has the option either to treat the lease as forfeited for such nonpayment, or in the absence of a surrender clause based upon a sufficient consideration, and a surrender thereunder, he may waive the forfeiture and collect the commutation money during the term.

"Sec. 2.  *  *  *  Where the lease contains an express covenant or promise to pay to the landowner the stipulated rental or commutation money, in default of which payment the lease shall become void, the landowner has the option either to declare forfeiture or waive it and collect the stipulated rental."

In the case of *Lawson v. Williamson C. & C. Co.,* 61 W. Va. 669, 57 S. E. 258, we find:

"The only clause in the agreement which affords a shadow of ground for the contention that the tenancy is one at will, or is terminable at the pleasure of the lessee, is the fourteenth, providing as follows: 'In case the lessee shall fail to comply with the provisions of this lease as to the payment of royalties, or as to the development of said property, then this lease shall become forfeited and utterly void.' That failure to enter upon the land, to develop it, or to pay rent, or comply with any other covenant or condition of the agreement, does not of itself release the lessee, by virtue of this clause, is abundantly settled by the decision of this court in *Roberts v. Bettman,* 45 W. Va. 143 [30 S. E. 95]. The forfeiture clause relied upon in the lease in that case was much stronger than this. It said failure to complete a well or

pay the rental, when due or within 10 days thereafter, should render the lease null and void, and that it could only be renewed by mutual consent, and that no right of action should, after such failure, accrue to either party on account of a breach of any covenant therein contained. And it was further agreed that the lessee should have the right at any time to surrender the lease to the lessor. Notwithstanding all this, the court held that the forfeiture clause was for the benefit of the lessor, and, as he had not in any way declared a forfeiture, but, on the contrary, had treated the lease, after the breach of its covenants, as a valid and subsisting contract, and insisted upon performance, and was not himself in default in any respect, a judgment for the rent due and in arrears was affirmed. The conclusion and judgment of this court was based upon the following decisions of the Supreme Court of Pennsylvania: *Galey v. Kellerman,* 123 Pa. 491 [16 Atl. 474]; *Wills v. Gas Co.,* 130 Pa. 222 [18 Atl. 721, 5 L. R. A. 603]; *Leatherman v. Oliver,* 151 Pa. 646 [25 Atl. 309]; *Phillips v. Vandergrift,* 146 Pa. 357 [23 Atl. 347]; *McMillan v. Philadelphia Co.,* 159 Pa. 142 [28 Atl. 220]; *Cochran v. Pew,* 159 Pa. 184 [28 Atl. 219]; *Conger v. Transportation Co.,* 165 Pa. 561 [30 Atl. 1038]. This doctrine is reaffirmed in *Henne v. South Penn. Oil Co.,* 52 W. Va. 192, 43 S. E. 147."

In the case of *Hancock v. Diamond Plate Glass Co.,* 162 Ind. 146, 70 N. E. 149, the forfeiture clause is as follows:

"This contract shall be deemed to commence at, and run from the date of signing hereof, and shall be deemed to have terminated * * * whenever the second party [the gas company], * * * or [their] assigns, shall fail to pay, or tender the rental price, herein agreed upon, within sixty days of the date of its becoming due."

The court in construing the same said:

"Such contracts are construed to mean that upon failure of the operator to pay the well rental, or the promised

sum for delay in beginning operations, the landowner may elect to put an end to the contract, and recover what is due him, or he may waive his right of forfeiture and allow the contract to run, and enforce payments as provided in that instrument. An operator will not be allowed to set up his own default or wrong in discharge of his obligation to a landowner to pay for what he has bought. There is no doubt but an operator may be relieved of his obligation to put down a well, or to pay the sum promised for his failure, upon such terms as may be agreed upon in the contract, either of benefit to the landowner, or of inconvenience to himself; but a naked default or nonperformance, such as is set up in this case, cannot be held to discharge his obligation."

Also from the same state, *Perry et al. v. Acme Oil Co.*, 44 Ind. 207, 88 N. E. 859:

"It has been decided in this state that where a lease provided for the drilling or operating of oil or gas wells, or, on failure to so drill or operate, to pay an agreed sum per day to the lessor for such failure or delay, and with the further provision that upon failure to drill or operate, or pay the agreed sum, the lease to become null and void, such a provision is for the benefit of the lessor, and he may either declare a forfeiture of the lease or proceed against the lessee for failure to perform the covenants of the lease. *Hancock v. Diamond Glass Co.*, 162 Ind. 146, 70 N. E. 149. To the same effect, see, also, *Edmonds v. Mounsey*, 15 Ind. App. 399, 44 N. E. 196, and cases cited; *Woodland Oil Co. v. Crawford*, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62; *Wills v. Manufacturers' Nat. Gas. Co.*, 130 Pa. 222, 18 Atl. 721, 5 L. R. A. 603; Thornton, The Law Relating to Oil and Gas, sec. 151."

In the case of *Evans v. Consumers' Gas Trust Co.* (Ind.), 29 N. E. 398, 31 L. R. A. 673:

"It is further agreed that the parties of the second part shall complete a well on the above-described prem-

ises within ninety days from the date hereof, and in case of failure to complete such well within such time the parties of the second part agree to pay to the parties of the first part for such delay, a yearly rental of $250 on the premises herein leased from the time for completing such well as above specified until such well shall be completed. * * * And a failure to complete such well, or to make such deposit or payment, as above or hereinafter mentioned, shall render this lease null and void and to remain without effect between the parties hereto. * * *

" 'Appellee contends that a proper construction of the lease gives it the option to avail itself of the benefits of the contract or not, as it pleases. If it fails to avail itself according to the terms of the contract, and within the time limited, the right to do so expires, and the contract becomes a nullity.' Also, that the contracts are not properly leases, but 'merely contracts between the parties for the doing of certain things and the payment of certain sums of money,' with the remarkable and peculiar feature for a contract that the entire failure of one party to perform not only forfeits his rights under it, but relieves him of liability. This is the effect, the appellee insists, of the provisions of the contract that a failure to complete such well, or to make the deposit or payment as stipulated, should render the lease null and void, and to remain without effect between the parties. * * *

"It is, of course, our duty to construe and give effect to the contract actually made by the parties, and not to make a contract for them. In construing it, however, it is also our duty to give effect to all of its provisions, if possible, and to consider it as mutually binding upon the parties. Such construction as that contended for by the appellee destroys its mutuality.

"The Supreme Court of Pennsylvania has had occasion to construe leases or contracts of a similar character, and has reached a conclusion, in which we fully concur, holding that the stipulation that the failure of the lessee to perform shall render the lease void is inserted wholly

for the benefit and protection of the lessor, and that it is optional with him to avail himself of it. *Wills v. Manufacturers' Nat. Gas Co.*, 130 Pa. 222 [18 Atl. 721], 5 L. R. A. 603; *Galey Bros. v. Kellerman*, 123 Pa. 492 [16 Atl. 474].

"In *Galey Bros. v. Kellerman, supra*, it is said: "The lessees had the right to enter at any time during the eight months and drill a well, or make the stipulated payments. If they did neither within the time limited, their right of entry was extinguished, and the contract itself was at an end. But the acts that forfeited their rights did not also forfeit those of the lessor. Their liabilities growing out of their nonperformance are to be distinguished from their rights under the contract. The latter they could forfeit, but the former belonged to the lessor, and could be lost only by his act. The lessees promised to complete one well within a given time. This was for the benefit of the lessor. If this was not done, he was to be compensated in money. If the money was not paid, he was at liberty to rid himself of his tenant, and resume the possession of his land. But the construction contended for by the plaintiffs in error transfers the punishment for the breach of the contract from him on whose default it arises to the innocent injured party.' "

The Supreme Court of Ohio, in speaking upon this subject in the case of *Woodland Oil Co. v. Crawford*, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62, says:

"The principal contention in this case arises upon that part of the lease which provides that a test well should be drilled within one year, and, in default, payment of a yearly rental of $128 for further delay, and the further provision that a failure to drill the test well or pay the rental should render the lease null and void, and not binding on either party, and not to be revived without the consent in writing of both parties. It was this provision that was relied upon in the demurrer to the amended petition, and in the third general defense in the answer of the oil company. Reduced to its essence,

this is a promise in writing, upon sufficient consideration, to pay a yearly rental of $128 for the right to use, to a limited extent, certain premises, with a further provision in the same instrument that a failure to pay should discharge the debt; that a default of payment should be the equivalent of payment; that failure should be performance; that nonpayment should be payment. Such contradictions in like instruments have caused courts to look critically into such instruments to ascertain the real intention of the parties, because such contracts cannot be enforced according to their letter. A promise to pay cannot be fulfilled by a failure to pay. A promise to drill a well cannot be satisfied by failure to drill such well. The proper construction to be placed upon such an agreement is that upon failure of the lessee to drill a well, or pay the rental, or both, as the case may be, the lessor may elect to put an end to the lease, and enforce payment of the promised rental, or sue for damages for failure to drill the well, or he may elect to have the lease continue in force to the end of the term, and enforce the drilling of wells and the payment of rentals as provided in the lease. Such provisions of forfeiture are for the benfit of the lessor, and not for the benefit of the lessee. The lessee cannot plead his own default or wrong in discharge of his obligation to drill or pay rental. Parties may agree that, in the case of failure to drill, or failure to pay, or both, the lessee shall be relieved of his obligation upon such terms as the parties may agree upon in the lease, whether the terms be of value to the lessor or loss or inconvenience to the lessee; but a naked default and nonperformance, as in this lease, cannot be held to discharge the obligations of the lessee. The following authorities are in point: *Leatherman v. Oliver*, 151 Pa. 646 [25 Atl. 309]; *Ray v. Western Pennsylvania Nat. Gas. Co.*, 138 Pa. 576 [20 Atl. 1065], 12 L. R. A. 290 [21 Am. St. Rep. 922]; *Clark v. Jones*, 1 Denio. [N. Y.] 516, 43 Am. Dec. 706; *Galey Bros. v. Kellerman*, 123 Pa. 491 [16 Atl. 474]; *Jones v. Western Pennsylvania Nat. Gas Co.*, 146 Pa. 204 [23 Atl. 386]; *Wills v. Manufacturers' Nat. Gas Co.*, 130

Pa. 222 [18 Atl. 721], 5 L. R. A. 603; *Ogden v. Hatry,* 145 Pa. 640 [23 Atl. 334]; *Smith v. Miller,* 49 N. J. Law, 521 [13 Atl. 39]; Taylor Land. & T., sec. 492; 1 Smith, Lead Cas. 102, 119."

The Supreme Court of Pennsyvania, in the case of *Ray v. Western Penn. Nat. Gas Co.,* 138 Pa. 576, 20 Atl. 1065, 12 L. R. A. 290, 21 Am. St. Rep. 922, had under consideration an oil lease contract containing this forfeiture clause:

"And a failure to complete one well, or to make any such payment within such time and such place, as above mentioned, shall render this lease null and void, and to remain without effect between the two parties."
—and used the following lauguage:

"The affidavit of defense set forth, in substance, that, by the terms of the lease, the only right granted was the right to operate for gas or oil; that the defendant never entered into the possession for this purpose, while the plaintiff not only at the time of the lease, but when the several sums sued for became due, respectively, was and still is in possession of the land described in the lease, and that, under these circumstances, and according to the law as declared in the decisions of this court, the lease, by its terms, on the defendants' failure to put down one well, or to make any one of the payments specified, became *ipso facto* null and void, without re-entry, and that, therefore, there is now no liability upon part of the defendant either to pay or to perform. The case is in all respects governed by our decision in *Wills v. Manufacturers' Nat. Gas Co.,* 130 Pa. 222 [18 Atl. 721], 5 L. R. A. 603. It is true the lessor's possession was not alluded to in the discussion and decision of that case, nor do we regard the question whether or not he was in possession, subject to the lease, as a matter of any great significance. We agree with the appellant in its contention that, if in such a case as this, the lessor should choose to avail himself of the forfeiture clause in his contract, a formal re-entry, to take advantage of the breach, was not required."

"But it is said that the doctrine declared in *Wills v. Manufacturers' Nat. Gas Co., supra,* is an innovation or change in the law; that the parties must be presumed to have contracted in view of the general law, as it was expounded when their engagements were formed, and to determine the legal effect of the contract otherwise is to impair its obligation, in contravention of the tenth section of the first article of the federal Constitution. In *Kenrick v. Smick, supra,* 7 Watts & S. (Pa.) 41, and in *Sheaffer v. Sheaffer, supra,* 37 Pa. 525, although the condition, in each case, was inserted in the interest of the lessor, it was held that, upon breach of the conditions by the lessee, the lease was, *ipso facto,* absolutely void, without re-entry, and could not afterwards be affirmed or continued by any subsequent recognition of the tenancy on part of the lessor, or by any act of his, other than the making of a new lease. But, as we said in *Wills v. Manufacturs' Nat. Gas. Co., supra,* the rigor of the rule was relaxed in *Davis v. Moss,* 38 Pa. 346, where the forfeiture was said to depend upon the terms of the instrument, 'unless there be evidence to affect the landlord with a waiver of the breach, like the receipt of rent, or other equally unequivocal act,' in which case the lease may be continued at the instance of the lessee. The ruling in *Davis v. Moss, supra,* was the first step in the transition from the doctrine of *Kenrick v. Smick* to the now well-settled rule laid down in *Galey v. Kellerman,* 123 Pa. 491 [16 Atl. 474], and *Wills v. Manufacturers' Nat. Gas Co., supra,* where the principle is established that, where the condition appears to have been inserted solely in the interest of the lessor, the lease is void upon the breach if the lessor, by some positive act, elects to take advantage of it. The departure from *Davis v. Moss* is greater, perhaps, than the reasoning in the case last cited would seem to indicate, but it was taken on due deliberation and careful study of the principles involved, and we are not inclined to recede from the position assumed. It is a somewhat significant fact that in all the cases cited, including *Davis v. Moss,* the forfeiture was set up by the lessor, in whose interest the condition was

inserted, upon the default of the lessee; in none of them, as in the case at bar, did the lessee set up his own default as a cause of forfeiture. No case has been brought to our notice in which the lessee was allowed to take advantage of his own wrong, or to set up his own default, to work a forfeiture of his own contract."

"The provision for forfeiture was doubtless inserted in anticipation that the lessee might make default, and become unable to pay, in which event he might put an end to the lessee's pretensions, and seek other means of development. This clause having been inserted as a protection to the lessor, he had the right either to declare the forfeiture or to affirm the continuance of the contract, and, if the lessor did not choose to avail himself of the forfeiture, the lessee cannot set it up as a defense to an action in affirmance of the contract. *Galey v. Kellerman* and *Wills v. Manufacturers' Nat. Gas. Co., supra.*"

This same court, having under consideration the following forfeiture clause:

"And it is further understood and agreed that upon the failure by the party of the second part, its successors and assigns, to keep and perform all the covenants herein contained, such failure to perform, or breach of the said covenant, shall work an absolute forfeiture of this grant or lease, and the privileges or easements hereby given shall absolutely cease, determine and become null and void"

—in the case of *Wills v. Manufacturers' Natural Gas Co.,* 130 Pa. 222, 18 Atl. 721, 5 L. R. A. 603, holds as follows:

"It is very plain that this clause of the contract was inserted in the interest and for the exclusive benefit of the lessor, whose purpose it was to have his lands developed for oil or gas. With this purpose in view he bound the defendant to commence the first well within a specified time, to prosecute the work actively and continuously to completion, and, failing in this, to pay him $1,000 per year until a well was completed. This was manifestly intended to be applied as a spur to the oper-

ator and to compel the development, which was the object of the lease. Anticipating, however, that the defendant might not only fail to put down a well, but through insolvency or otherwise might become unable to pay the money, the plaintiff provided in the contract, upon the failure of the company to keep its covenants for a forfeiture of the lease, which would enable him in that event to put an end to the lessee's pretensions, and give him an opportunity to seek other means of development. It was certainly not in contemplation of the parties that the defendant might set up its own default as a cause for cancellation. If this is so, this contract, drawn with exceptional care for the protection of the lessor, is a mere rope of sand; its obligations could only 'keep the word of promise to the ear to break it to the hope.' It was the duty of the lessee to develop the territory by putting down a test well according to the stipulations of his contract; failing to do so, and failing also to pay the money agreed upon, the plaintiff had an undoubted right to declare a forfeiture, but the lessee had no such right.

"But although the lessor had this right, he was not, we think, under the present state of the law, bound to exercise it. The clause of forfeiture having been inserted wholly in his interest and for his protection, it was competent for him to dispense with the provisions and to affirm the continuance of the contract. His right was optional or elective, and when default was made by the defendant on both alternatives, the plaintiff might either forfeit the contract or affirm its continuance, as he chose.

"The English authorities recognize the rule that 'even in the case of a lease for years, when the direction is that it shall become void on breach of the condition, it will only be void at the option of the lessor; the lessee shall not take advantage of his own wrongful performance of the contract in order to destroy the lease, which had perhaps turned out a disadvantageous one.' Note to *Dumper's Case*, 1 Smith, Lead Cas. *89, citing *Doe v. Bancks*, 4 Barn. & Ald. 401; *Rede v. Farr*, 6 Maule

& S. 121; *Arnsby v. Woodward*, 6 Barn. & C. 519, and other cases.

"In *Doe v. Bancks*, 4 Barn. & Ald. 401, the lease was for mining purposes, and contained a proviso, in substance, as follows: 'Provided, also, and it is mutually agreed, etc., that the aforesaid works shall commence and begin within one year from the date hereof, and if the same shall stop or cease working at any time for two years, this lease shall be deemed void to all intents and purposes.' Best, J., said: 'In construing this clause of the lease we must look to the object the parties had in view. The rent was to depend upon the number of tons of coal raised. In order to derive any benefit from the mine it was the object of the landlord, by introducing this clause, to compel the tenant to work it. The clause therefore was introduced solely for the benefit of the landlord to enable him, in case of a cesser to work, to take the possession of the mines, and either to work them himself or let them to some other tenant. That, therefore, being the object of the parties in introducing the clause, I think it will be fully answered by holding the lease to be void at the option of the landlord. Besides, I take it to be a universal principle of law and justice that no man can take advantage of his own wrong.'

"A distinction formerly prevailed between a proviso declaring that the lease should be void in a specified event and a proviso enabling the lessor to determine it by re-entry. It was held that in the former case the lease became absolutely void on the event named, and was incapable of being restored by acceptance of rent or other act of intended confirmation; whilst in the latter some act, such as entry or claim, must have been performed by the lessor, to manifest his intention to end the demise, which was voidable in the interval, and consequently confirmable.

"The force of this distinction it is said, in Taylor on Landlord and Tenant, sec. 492, has been almost, if not quite, abated by the modern decisions, which establish that the effect of a condition, making a lease void upon

a certain event, is to make it void at the option of the
lessor, in cases where the condition is intended for his
benefit, and he actually avails himself of his privilege. To
the same effect is Platt on Leases, vol 2, page 327.

"But it is entirely optional with the lessor whether
he will avail himself of this right or not, although by the
terms of the proviso the term is to close or become void
for the nonperformance of the covenant; and, if the les-
sor does not avail himself of it, the term will continue,
for the lessee cannot elect that it shall cease or be void.
Taylor, Land. & Ten., *supra.*

"Where there is a proviso in a lease that on nonpay-
ment of rent the term shall cease, the lessor, and not the
lessee, has the option of determining the lease upon a
breach made. *Reid v. Parsons,* 2 Chitty, 247.

"The English law in this respect has been generally
followed in this country, and such a lease is held to be
good until avoided, though the lessee is estopped to set it
up against the lessor. A lessee cannot avail himself of
his own act to vacate a lease, on the principle that no
man shall be permitted to take advantage of his own
wrong. Wood, Land. and Ten., 1204.

"So, Mr. Parsons, in his Law of Contracts, vol. 1,
page 507, referring to the distinction formerly recog-
nized between the effect of a proviso declaring that the
lease shall be void on a specified event, and a proviso en-
abling the lessor to determine it by re-entry, says: 'The
distinction is now exploded, and it is held that the lease
is voidable only at the election of the lessor, but not of
the lessee, though the proviso expressly declare that it
shall be void. To the same effect are the cases of *Clark
v. Jones,* 1 Denio [N. Y.] 516 [43 Am. Dec. 706], and
*Phelps v. Chesson,* 34 N. C. 194, and many others that
might be referred to.

"But the acts that forfeited their (the lessees') rights
did not also forfeit those of the lessor. Their liabilities
growing out of their nonperformance are to be distin-
guished from their rights under the contract. The latter

they could forfeit, but the former belonged to the lessor, and could be lost only by his act. The lessees promised to complete one well within a given time. This was for the benefit of the lessor. If this was not done, he was to be compensated in money; if the money was not paid, he was at liberty to rid himself of his tenants and resume the possession of the land. But the construction contended for by plaintiffs in error transfers the punishment for the breach of the contract from him on whose default it arises to the innocent injured party. Because the lessees have secured the control of the land of the lessor by covenants which they have broken, the lessor shall be deprived of all redress at law by the very acts of his lessees which give him a cause of action; their default takes away his remedy. The acts or omissions of which he complains are an answer to his complaint. We should need the constraint of insurmountable necessity to induce us to adopt the construction contended for.

"We are of opinion that the defendant should have been denied the advantage of its own default; and, as the lessor in this case has not, either by word or act, availed himself of the privilege of forfeiture, but, on the contrary, by a demand for payment of the price of the lessee's delay, has affirmed the continuance of the contract, there is nothing shown to prevent his recovery."

In *Springer v. Citizens' Natural Gas Co.*, 145 Pa. 430, 22 Atl. 986, the syllabus is as follows:

"(a) An oil and gas lease contained a covenant that the lessee should complete a well within a certain time, or thereafter pay to the lessors certain sums semi-annually, until such completion, and stipulated that the failure to complete said well, or to make said payments as covenanted, should render the lease null and void and of no effect between the parties.

"1. The forfeiture clause being inserted in the interest of the lessors, they had the option, upon a default by the lessee, either to assert a forfeiture, or to affirm the continuance of the contract."

In the case of *Smith v. Miller*, 49 N. J. Law, 521, 13 Atl. 39, the syllabus is as follows:

"In an action for breach of a covenant to pay rent, in a lease which contained a clause that if default should be made for 60 days in the payment of the rent the defendant should forfeit all the rights and privileges therein given, and in case of such default and forfeiture the demised premises should revert to the lessors, to be enjoyed by them as if the lease had never been made, such default is no defense to the action, as the default does not void the lease, but renders it voidable at the option of the lessor." *Jones v. Fas Co.*, 146 Pa. 204, 23 Atl. 386; *Cochran v. Pew*, 159 Pa. 184, 28 Atl. 219; *Conger v. Transportation Co.*, 165 Pa. 561, 30 Atl. 1038; *Edmonds v. Mounsey*, 15 Ind. App. 399, 44 N. E. 196; *Bettman v. Shadle*, 22 Ind. App. 542, 53 N. E. 662; *Scott v. Gas Co.*, 42 Ind. App. 614, 86 N. E. 495; Archer on Oil & Gas, c. 12; *Cove v. Smith*, 23 Okla. 909, 102 Pac. 114.

So the case at bar, tested by the rule laid down by the foregoing cases, falls well within the line laid down therein.

We find, in the case under consideration, every test enunciated in the above line of cases. There is: (1) The express agrement to pay the rental of $1 per acre per annum in case there is a delay in drilling the well; and (2) there is no express agreement that the lease shall become null and void unless the rental is paid, upon a default in commencing operations. This being true, the forfeiture clause in said contract is for the benefit of the lessor only, and he can avail himself of it and declare a forfeiture, upon default upon the part of the lessee, or he can, at his option, waive the default and collect the rentals provided in the lease. We think this construction is fair, equitable, and just to all parties,

and well expressed their intention as disclosed by the terms of the contract, and such an interpretation works no hardships upon the lessee. Should the lease prove burdensome or unprofitable, a speedy and expeditious way has been provided in the contract by which the lessee can rid himself of the same simply by tendering a formal release under the surrender clause, which clause has been placed in the lease contract for his benefit.

Did plaintiff prove his case? The trial was before the court. The evidence was very brief; the plaintiff only testifying. He testified that he made the lease to defendant on the 8th of May, 1909, and a copy of same was introduced by agreement. He testified further that defendant had never drilled a well thereon, and had not paid him anything nor executed to him a release of the premises, and that $140 was then due him under the contract, and that he had demanded payment thereof. This testimony made out the case, and the trial court rendered judgment thereon, and we think the evidence supports it.

The judgment is affirmed, with costs.

By the Court: It is so ordered.