## GRAVES et al. v. NICHLOS.

No. 20259. Opinion Filed July 21, 1931.

Melton & Melton, for plaintiffs in error.

Bond, Hatcher & Bond, for defendant in error.

ANDREWS, J. This is an appeal by the plaintiffs from a judgment of the district court of Grady county in their favor. The parties appear here as they appeared in the trial court, and they will be referred to hereinafter as plaintiffs and defendant.

The record shows that the plaintiffs were the owners of certain real estate which, according to the allegations of their petition, they leased for oil and gas mining purposes to the defendant by a written lease, and "on the same day, at the same time, and as a part of said transaction," the plaintiffs and the defendant entered into a "written contract."

Since the "written contract" and the written oil and gas mining lease were executed on the same day at the same time and as a part of the same transaction, they each constitute parts of the contract entered into at that time. Fidelity National Bank v. Copeland, 138 Okla. 19, 280 Pac. 273.

For the purpose of distinguishing the instruments referred to, the oil and gas mining lease will be referred to hereinafter as the lease, the "written contract" will be referred to hereinafter as the written agreement, and the entire contract entered into as aforesaid will be referred to hereinafter as the contract.

The written agreement with the description of the real estate, the signatures of the parties, and formal parts omitted, was as follows:

"This agreement made and entered into this 9th day of August, 1926, by and between G. W. Graves and Irene Graves, his wife, parties of the first part and John B. Nichlos, party of the second part, all of Grady county, state of Oklahoma,

"Witnesseth, that parties of the first part have and do execute an oil and gas lease on the following lands, to wit:

"* * * To party of second part, and as a consideration thereof, party of second part agrees to drill a test well for oil or gas in the center of the southeast quarter of the northwest quarter of said section, and as a further consideration, party of second part agrees to pay to second parties the sum of $50 cash bonus, and a like sum of $50 upon the 9th day of each succeeding month thereafter, until said second party has spudded in said well on the above-described lands."

By the terms of the written agreement, the plaintiffs agreed to execute an oil and gas mining lease to the defendant, and the defendant, as a consideration therefor, agreed "to drill a test well for oil or gas" at the place therein designated, and, "as a further consideration" therefor, "to pay to second parties the sum of $50 cash bonus, and a like sum of $50 upon the 9th day of each succeeding month thereafter, until said second party has spudded in said well on the above-described lands."

The record shows that the plaintiffs per-

formed the duty imposed upon them by the terms of the written agreement, that is, they executed and delivered the lease. The record shows that the defendant made monthly payments up to the 9th day of May, 1927; that he did not make any other payments, and that he did not drill a test well for oil or gas.

The question of failure of consideration for the execution and delivery of the lease is not presented, and there is neither pleading nor proof of any damage arising from the breach of the provision of the written agreement to drill a well.

The plaintiffs contend that under the contract they were entitled to the payment of $50 per month for five years from the date of the written agreement, and that the amount unpaid was $2,600, for which amount they prayed judgment. The defendant contends, and the record shows, that he released the lease of record and gave a written notice to the plaintiffs that he had released the same of record on the 23rd day of May, 1927. He contends that he was under no obligation to make monthly payments thereafter.

The trial court found and adjudged that the defendant was obligated to pay monthly payments up to the date of the release of the lease of record by the defendant, and no longer, and that a payment due on the 9th day of May, 1927, had not been paid. The court took the cause from the jury and rendered judgment for the plaintiffs for the amount of the payment due on May 9, 1927, to wit, $50, and the costs of the action. From that judgment the plaintiffs appealed to this court.

An examination of the provisions of the written agreement discloses no time limit for the drilling of a test well, and that there is nothing to indicate the length of time the monthly payments therein provided to be made were to continue, in the absence of the spudding in of a test well. While the monthly payments therein provided to be made were to cease at the time the test well was spudded in, the written agreement is indefinite and uncertain as to how long the monthly payments should continue when no test well had been spudded in. We do not care to hold that the monthly payments were intended to be continued forever. By so holding we would have to hold that the contract was void. The contract discloses an intent that there should be a limitation on the number of monthly payments to be made, though no test well was spudded in. Since it is impossible, from the provisions of the written agreement, to determine how long the month-

ly payments should continue when no test well had been spudded in, we must look elsewhere for an answer to that question.

The lease was upon a regular producers 88 form, and contained a provision as follows:

"If no well be commenced on said land on or before the 9th day of August, 1927, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor or to the lessor's credit in the First National Bank at Rush Springs, Okla., or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of $60, which shall operate as a rental, and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

The lease is what is commonly called an "unless" lease. It is not an "or" lease. The rule stated by this court in Cohn v. Clark, 48 Okla. 500, 150 Pac. 467, relied upon by the plaintiffs, relates to an "or" lease. There is a different rule of law applicable to an "unless" lease. There is nothing in the provisions of the lease that required the defendant either to pay rentals or to drill a well. The defendant had an option to drill or to pay rentals, but he was not required to do so by the terms of the lease.

The lease was for a term of five years, but it was therein provided that the lease should terminate as to both parties at the expiration of one year from the date thereof, unless the defendant, on or before that date, should pay or tender rentals or commence a well on the land. The defendant was therein given the option of terminating the lease at the end of one year by failing to commence a well or pay or tender rentals, but the defendant was not given any other option to terminate the lease.

The contract discloses no intent that monthly payments should continue after the expiration of the lease, and it discloses an intent that the monthly payments should be made only during the term of the lease. Such was the understanding of the plaintiffs, who asked for judgment for the unpaid monthly payments during what they consid-

ered to be the term of the lease, to wit, five years from the date of the lease.

It is clear that the parties contracted that the plaintiffs would execute and deliver to the defendant a lease; that the defendant would drill a well under the terms and provisions of the lease, and that the defendant would pay to the plaintiffs $50 per month until he drilled a well under the terms and provisions of the lease. That such was the intention of the plaintiffs is disclosed by the testimony of one, the plaintiff with whom the trade was made.

The issue between the parties doubtless arises from a misunderstanding of the provisions of the lease. The plaintiffs contend that the lease was for a term of five years from the date thereof, and that, under the provisions of the written agreement, the defendant was required to pay $50 per month until he spudded in a test well on the land. The plaintiffs overlook the provisions of the lease authorizing the defendant to terminate the lease at the end of one year from the date thereof, after which termination no well could be drilled. By the terms of the lease, the defendant, for a period of one year, had all of the rights provided by the lease. Among those rights was the right to continue the lease for an additional twelve months by commencing a well thereon, or by paying $60 rental, and the right to terminate the lease by failing to commence a well or to pay the rental therein provided. As a consideration for the lease, the defendant was required, by the provisions of the written agreement, to pay $50 per month. If he paid the $50 per month during that year, the plaintiffs were powerless to interfere with his rights thereunder, but there is nothing in the contract that required him to pay $60 rental on or before the 9th day of August, 1927, on which date, in the absence of the commencement of a well or the payment of a rental, the lease would terminate.

It appears to us that, since, by the terms of the contract, the defendant was given a lease which was valid for a term of one year, he should be required to pay the $50 monthly payments for a period of one year. We find nothing in the provisions of the contract which authorized the defendant to release the lease of record prior to the expiration of one year and thereby relieve himself of his obligation to pay $50 per month for the term of the lease.

The trial court did not err in taking the cause from the jury, as there was no question for a jury to determine, but the trial court erred in rendering judgment for the plaintiffs for only $50 and costs. The defendant was obligated to pay monthly payments due on May 9th, June 9th, and July 9th, in the total sum of $150, and the trial court should have rendered a judgment for that amount, together with the costs.

The cause is remanded to the district court of Grady county, with directions to enter judgment in favor of the plaintiffs and against the defendant in the sum of $150, together with the costs of this action.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CULLISON, J., absent.

Note.—See under (1) 6 R. C. L. 850; R. C. L. Perm. Supp. p. 1840; R. C. L. Pocket Part, title "Contracts," § 240.