## McCRABB v. MOULTON.
### No. 12012.

Circuit Court of Appeals, Eighth Circuit.

Jan. 8, 1942.

F. H. Reily, of Shawnee, Okl., and H. H. Larimore, of St. Louis, Mo. (Joe H. Reily, of Shawnee, Okl., on the brief), for appellant.

Ruby M. Hulen, of St. Louis, Mo. (William M. Ward and Alan R. Klobasa, both of St. Louis, Mo., and A. D. Sappington, of Columbia, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This was an action at law brought by appellant, seeking to recover $74,000 in damages for breach of a contract which he alleged obligated appellee to drill an oil well on certain properties described in the contract. It will be convenient to refer to the parties as they were designated in the trial court. The contract was in writing and a copy of it was attached to and by proper reference made a part of plaintiff's complaint.

Defendant moved to dismiss the action on the ground that the complaint did not state facts sufficient to constitute a cause of action. The court sustained this motion and from the judgment of dismissal entered thereon plaintiff has appealed. The appeal presents the sole question as to whether the contract for the breach of which this action was brought obligated defendant to drill an oil well. If it did, the judgment must be reversed, but if it did not, the judgment should be affirmed.

The contract recites that the plaintiff was the owner of certain oil mining leases upon lands located in the State of Oklahoma and described in the contract; that

defendant desired to buy these leases and the plaintiff desired to sell them; that in consideration of the mutual covenants contained therein and the sum of $5,000 to be paid by defendant, the plaintiff agreed to sell and assign, and the defendant agreed to buy the described leases; that the American National Bank of Shawnee, Oklahoma, was designated as "escrow agent" for this contract. It was provided in the contract that within thirty days after signing it, there should be placed with the escrow agent this contract, and the sum of $5,000 to be furnished by the defendant, together with proper forms of assignments conveying and assigning to the defendant the leases described; that the plaintiff, who was designated in the contract as the seller, would furnish the defendant, who was designated therein as the purchaser, with an abstract of title, together with copies of the original leases and the assignments of them for examination and approval by the purchaser's attorney. There were other provisions with reference to the examination and approval of these instruments but they do not seem to be of any materiality in the present controversy. The contract contains provision that,

"The parties agree that when an opinion of purchaser's attorney approving the abstracts of title, leases and assignments shall be delivered to the escrow agent, the said escrow agent shall pay the money or deliver the cashier's check to the seller and deliver the assignments to the purchaser.

"The purchaser hereby agrees to reassign the said leases to the said seller on the 1st day of December, 1939, unless on or before said date he shall begin the actual drilling in good faith, that is, making hole or an oil and gas well in the center of the following described lands and tenements, to-wit: (Here follows description of certain lands), and diligently and in a workmanlike manner drill the same to the second Wilcox sand, unless oil or gas is found and produced in commercial quantities at a lesser depth; and in drilling the said well the purchaser agrees to do the following things, to-wit: (Here follows certain specifications as to the drilling.)"

Following these specifications the contract provides:

"The Purchaser agrees with the seller that if he abandons the well prior to the completion or is unable to complete the same, that within six months thereafter he will begin the drilling of a second well on the same tract of land and drill the said well in conformity with the terms of this contract governing the first well, and covenants that a failure to comply with this clause, if such a contingency arises, shall terminate this contract and the said purchaser agrees to reassign the said leases to the seller.

"That the said purchaser further agrees with the seller that he will not assign this contract, or the said leases assigned to him, or any part thereof.

"It is hereby agreed between the parties hereto that the said assignment, or assignments, to be made by the Party of the First Part, in connection with this agreement, assigning the said leases to the Party of the Second Part, pursuant to this agreement, shall contain a provision to the effect that if the Party of the Second Part fails to commence the drilling of a well on or before December 1st, 1939, the said assignments shall become null and void."

The contract contained a declaration that time should be of its essence.

■ Unless this contract is ambiguous, the intention of the parties must be gathered from its words. Defendant paid the $5,000 consideration but did not drill nor attempt to drill an oil well on the described property, nor did he reassign the leases to plaintiff. The contract contains no provision purporting to obligate the defendant to drill a. well. It does contain provision obligating him to reassign the leases if he fails to commence the drilling of a well on or before December 1, 1939. He has not reassigned these leases, but, as has been observed, the action for damages is based not upon his failure to reassign the leases but upon his failure to drill an oil well. It is true the contract contains provision requiring him to begin the drilling of a second well if he abandons the drilling of a first well prior to its completion, or is unable to complete it within six months thereafter. But he has not abandoned the drilling of any well, because he did not begin to drill any well, and hence, this provision can have no application to the admitted facts.

■ Plaintiff has cited a number of authorities which are claimed to support his contention that defendant was obligated to drill a well because he has failed to re-

assign the leases. An examination of these authorities convinces that they do not support plaintiff's contention because in those cases there was a provision in the contracts obligating the lessee to drill a well. The contract here involved is what is described in the authorities as an "unless" lease, as distinguished from an "or" lease. If the word "unless" precedes the description of the act to be performed, whether it will be the payment of money or the drilling of an oil well, it is uniformly held that no obligation to perform such act was imposed by the contract but an option was granted, leaving to the election of the party the performance or nonperformance of the act. In such case, the failure to exercise the option creates no liability. The rule is stated in Graves v. Nichlos, 151 Okl. 27, 1 P.2d 708, loc. cit. 710, as follows:

"The lease is what is commonly called an 'unless' lease. It is not an 'or' lease. The rule stated by this court in Cohn v. Clark, 48 Okl. 500, 150 P. 467, L.R.A.1916B, 686, relied upon by the plaintiffs, relates to an 'or' lease. There is a different rule of law applicable to an 'unless' lease. There is nothing in the provisions of the lease that required the defendant either to pay rentals or to drill a well. The defendant had an option to drill or to pay rentals, but he was not required to do so by the terms of the lease."

The case of McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 243 P. 582, 585, is a leading case on the interpretation of the word "unless" and the word "or," as used in oil and gas leases. In that case, the court, among other things, said:

"In order to arrive at an understanding of the true intent and meaning of the Day lease, it is essential to consider two well-known types of oil and gas leases, and the fundamental difference between the two. Indeed, a correct understanding of the question involved here cannot be arrived at without doing so.

"These are denominated 'or' and 'unless' leases in the nomenclature of the oil fields and in legal literature anent the same. Under the provisions of the 'or' type the lessee is obliged to either 'drill or pay'; under the 'unless' type he is not obligated to do either. * * * The provision that, if no well be commenced on the land within a certain period, the lease should become null and void, unless the lessee should pay to the lessor for further delay a certain amount per year in advance for each additional year until a well be commenced, or, completed (with occasional verbal changes here and there), became standard. Under this clause the lessee was granted an option to drill or to pay rental, or to do neither as he chose. And under it the lease terminated ipso facto upon the failure to drill or pay, without further liability on the part of the lessee for rentals thereafter accruing."

The Supreme Court of Oklahoma in Deming Investment Co. v. Lanham, 36 Okl. 773, 130 P. 260, 263, 44 L.R.A.,N.S., 50, held that, "The lease sued on herein does not bind the lessee to do anything. It is nothing but an option, preventing the lessor, after receiving the bonus or rent for the first year, from leasing the land to some one else during such time."

On the question of the construction of these oil leases, see, also, Eastern Oil Co. v. Smith et al., 80 Okl. 207, 195 P. 773; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 P. 260, 43 L.R.A.,N.S., 487; New England Oil & Pipe Line Co. v. Rogers, 154 Okl. 285, 7 P.2d 638; Bowes v. Republic Oil Co., 78 Mont. 134, 252 P. 800.

We conclude that there was no obligation on the part of the defendant to drill an oil well, and hence, there could be no recovery of damages for his failure so to do.

But it is urged that the defendant has kept the leases and failed to reassign them, as he was obliged to do under the terms of the contract. This contention is probably sufficiently answered by the statement that no damages are sought to be recovered because of this breach of the contract. It is also to be observed that the contract itself and the assignments contain provisions that upon defendant's failure to drill for oil by December 1, 1939, such assignments "shall become null and void." These provisions are self-executing. Cohn v. Clark, 48 Okl. 500, 150 P. 467, L.R.A.1916B, 686. Hence, a failure to execute the assignments could not have resulted in damage to the plaintiff.

We conclude that the trial court properly held that the plaintiff's complaint failed to state facts sufficient to constitute a cause of action. The judgment appealed from is therefore affirmed.