## MASSACHUSETTS BONDING & INS. CO. v. LEWIS et al.

No. 9822—Opinion Filed Feb. 1, 1921.

(Syllabus by the Court.)

### 1. Indians—Departmental Oil Lease—Cancellation.

Under a cancellation provision of a full-blood oil lease, payment of the cancellation fee of one dollar and expression of intention to cancel does not constitute a cancellation, unless, within the period of cancellation, the provisions relating to delivery of recorded releases and to surrender of parts of leases be complied with; and such provisions are held not to be unreasonable requirements.

### 2. Principal and Surety—Surety Company—Liability—Payment of Demands Under Oil Lease on Indian Land.

A surety company, surety on a bond guaranteeing compliance with the terms of a full-blood oil and gas lease, made to the United States government, is justified in paying the demands of the government of rentals and charges claimed by the government under the terms of an oil lease, where the lessee has failed to comply strictly with the terms provided in the lease and the regulations of the Department of the Interior for cancellation, since a bonding company for hire is not like an accommodation surety, dealing at arm's length with its obligee, but is held to a strict compliance with the terms of its contract.

### 3. Appeal and Error—Failure to File Brief—Reversal.

Where the defendants in error fail to file a brief and have not offered any excuse for such failure, and the plaintiff in error has filed a complete record in the Supreme Court and has served and filed a brief in compliance with the rules of the court, the Supreme Court is not required to search such record to find some theory upon which the judgment below may be sustained; and, where the brief filed by the plaintiff in error appears to reasonably sustain his assignments of error, the court may reverse the case in accordance with the prayer of the petition of the plaintiff in error.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by the Massachusetts Bonding & Insurance Company against S. R. Lewis and John M. Ingram on indemnity bond, Judgment for plaintiff for less than sued for, and it brings error. Reversed and remanded.

Sol H. Kauffman, for plaintiff in error.

O. S. Booth, for defendants in error.

ELTING, J. This action was brought by plaintiff in error for reimbursement of money which it had paid as surety under a bond executed by the Ingram Oil company. Recovery by the plaintiff in error against the defendants in error was sought under a bond executed by the defendants in error, indemnifying the plaintiff in error against loss incurred by it as surety for the Ingram Oil company. Both bonds bear the same date and are a part of the same transaction. The cause was tried upon an agreed statement of facts, and judgment rendered for plaintiff in error, allowing only one of the accounts which it had paid under the said surety bond. The plaintiff in error appealed to this court for error in not allowing all sums claimed by the appellant.

The agreed statement of facts is substantially as follows: The Ingram Oil Company desired to take oil and gas leases on restricted Indian lands and were required under the regulations of the Department of the Interior to file a bond in the sum of $15,000. This bond was made by plaintiff in error, and in consideration thereof defendants in error executed a bond in a like sum indemnifying plaintiff in error against loss by reason of such suretyship. Thereafter the Ingram Oil company procured certain oil leases upon restricted lands through and by approval of the Department of the Interior. All of said leases contained the following provisions:

7. "The lessee may at any time, by paying to the Indian Superintendent all amounts then due as provided herein and the further sum of one dollar, surrender and cancel this lease and be relieved from all further obligation or liability thereunder; provided, if this lease has been recorded, lessee shall execute a release and record the same in the proper county recording office."

8. "This lease shall be subject to the regulations of the Secretary of the Interior, now or hereafter in force, relative to such leases, all of which regulations are made a part and condition of this lease; provided, however, that no regulations made after the approval of this lease, affecting either the length of oil and gas leases, the rents or royalties or payments thereunder, or the assignment of leases which operate to effect the terms and conditions of this lease."

9. "Upon the violation of any of the substantial terms and conditions of this lease the Secretary of the Interior (or lessor, in event restrictions are removed as provided in paragraph 12 hereof) shall have the right, at any time after thirty days' notice to the lessee specifying the terms or conditions violated, to declare this lease null and void, and the lessor shall then be entitled and authorized to take immediate possession of the land."

The leases taken by the Ingram Oil company and which are involved in this controversy were approved by the Secretary of the Interior on the following dates:

John Tiger lease on March 19, 1914.

Henry Brown lease on March 19, 1914.

Thomas Kelly lease on February 19, 1913.

Nicey Tiger lease on October 11, 1913.

Said leases further provided:

4. "The lessee shall exercise diligence in sinking wells for oil and natural gas on land covered by this lease and shall drill at least one well thereon within one year from the date of approval of this lease by the Secretary of the Interior, or shall pay to the United States Indian Superintendent, Union Agency, Muskogee, Oklahoma, for the use and benefit of the lessor for each whole year the completion of such well is delayed after the date of such approval by the Secretary of the Interior for not to exceed ten years from the date of such approval, in addition to the other considerations, named herein, a rental of one dollar per acre, payable annually, and if the lessee shall fail to drill at least one well within any such yearly period and shall fail to surrender this lease by executing and recording a proper release thereof and otherwise complying with paragraph numbered 7 hereof on or before the end of any such year during which the completion of such well is delayed, such failure shall be taken and held as conclusively evidencing the election and covenant of the lessee to pay the rental of one dollar per acre for such year and thereupon the lessee shall be absolutely obligated to pay such rental. The failure of the lessee to pay such rental before the expiration of fifteen days after it becomes due at the end of any yearly period, during which a well has not been completed as provided herein, shall be a violation of one of the material and substantial terms and conditions of this lease, and be cause for cancellation of such lease under paragraph numbered 9 hereof; but such cancellation shall not in anywise operate to release or relieve the lessee from the covenant and obligation to pay such rental, or any other accrued obligation. * * * "

No well was ever drilled on the premises covered by said leases.

The regulations prescribed by the Secre-

tary of the Interior covering such leases aforesaid are contained in the following provision:

40. "Where a lessee makes an application for the cancellation of an approved lease, all royalties or rentals due up to the date of application of the cancellation must be paid before such application will be considered, and the parts of the lease delivered to the lessor and lessee shall be surrendered." '(Amended by departmental order of January 11, 1909, which provides that the lessee and surety shall be held for payment of all royalties and rentals due up to the date of completion of application for cancellation, which, if the lease has been recorded, also includes filing of a properly executed and recorded release of record, and payment to Superintendent of the Union Agency one dollar cancellatio fee if lease so stipulated.)

In the agreed statement of facts it is admitted that none of the said leases were recorded in the counties in which the said leases were situated. The Interior Department claimed that the following amounts were due and accrued upon said leases:

Thomas Kelly lease due February 19, 1915, $104.00.

John Tiger lease due March 19, 1915, $92.00.

Nicey Tiger lease due October 11, 1914 $184.00.

Henry Brown lease due March 19, 1915, $138.00.

It is not denied that the amounts above claimed by the government are correct, but the right of the government to recover the same was denied by the defendants in error. The agreed statement of facts shows that the Ingram Oil Company remitted to the Indian Agency $1 and advised that it desired to surrender the Thomas Kelly lease on February 19, 1915, but did not then or previously deliver up any copy of the lease or file a recorded release either with the Indian Agency or with the Secretary of the Interior. On March 16, 1915, the Ingram Oil Company by mail remitted to the Indian Agency $1 and advised that they desired to surrender the John Tiger lease, but did not on or before March 19, 1915, deliver up any copy of the lease or file a recorded release, either with the Indian Agency or with the Secretary of the Interior, but did on April 2, 1915, file with the Indian Agency a recorded release of said lease.

On October 10, 1914, the Ingram Oil Company by mail remitted to the Indian Agency $1 and advised that it desired to surrender the Nicey Tiger lease, but did not on or before October 11, 1914, deliver up any copy of the lease or file a recorded release with the

said Indian Agency or with the Secretary of the Interior; but did on November 17, 1914, file at said Indian Agency a recorded release of said lease.

It appears from this statement of agreed facts as to the time and steps taken as to the cancellation of said leases that as to the Thomas Kelly lease the attempted cancellation was on the last day of the period of cancellation, and that the attempted cancellation as to the John Tiger lease was on March 16th, three days before the full year had accrued, and that as to the Henry Brown lease the attempted cancellation was not until one day after the accrual period, and that as to the Nicey Tiger lease the attempted cancellation was one day before the time of accrual.

The total amount of said royalties claimed amounted to $518, less a credit of $3, being the amount paid by the lessee as a surrender fee on three of the leases. The trial court denied the plaintiff in error the right to recover on the Thomas Kelly lease, the John Tiger lease, and the Nicey Tiger lease; holding that the penalties had not accrued under those three leases, since the lessee had substantially complied with the cancellation provisions of the said three leases, but holding that they had failed to comply with the surrender provisions under the Henry Brown lease, and allowed the plaintiff in error a recovery of the amount accrued under the Henry Brown lease in the sum of $138, less one dollar refunded by the Department of the Interior, or $137, together with interest thereon from the 21st day of February, 1916. Said cause was tried on the 12th day of October, 1917. A jury was waived by the parties in open court and consent given that the cause be tried by the court without a jury.

The issue involved in this cause rests upon the right of the government of the United States, through the Department of the Interior, to the payment of the demands under the leases designated above; and if, under the terms of the contract of suretyship and the terms of the leases (all of which leases contained the same terms), the penalties, rents, and charges were legal and subsisting demands against the lessee, the Ingram Oil Company, then in that event the plaintiff in error was justified in paying the demands of the Interior Department and should have recovered in the court below. A portion of one of the obligations of the lessee or principal in the bond contains the following language:

"Shall faithfully carry out and observe all the obligations assumed, affecting the interest of the said allottees in said indentures

of lease, assignments, or drilling contracts, to which such 'lessee or principal' is now or may hereafter become a party, and shall observe all the laws of the United States and regulations that have been, or shall be hereafter, lawfully prescribed by the Secretary of the Interior, relative to oil and gas mining leases executed by allottees of the Five Civilized Tribes, and shall in all particulars comply with the provisions of the said leases and such regulations."

The plaintiff in error in this case is a bonding company for hire. They are not accommodation sureties and do not deal at arm's length with their obligee. The following rule is laid down as to the nature of the obligation and rights of bonding companies making bonds for hire. Quoting from 32 Cyc. pp. 306, 307, and notes thereunder and authorities cited, especially note 92:

"Construction and Operation of a Contract. Generally speaking a contract of suretyship by a surety company is governed by the same rules as the contracts of other sureties, but some distinctions are made by the courts in construing such contracts. The doctrine that a surety is a favorite of the law, and that a claim against him is strictissimi juris, does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves 'surety companies', their business is in all essential particulars that of insurers. Their contracts are usually in the terms prescribed by themselves, and should be construed most strongly in favor of the obligee. Limitations on the powers of an agent of a surety company do not affect persons dealing with the agent without knowledge thereof. A surety company is estopped by the material recitals in a bond which it has executed."

The following authorities are in point on the question of obligations and rights of surety companies for hire:

Cowles v. United States Fidelity & Guarantee Co. (Wash.) 72 Pac. 1032; Pacific Bridge Co. v. United States Fidelity & Guarantee Co. (Wash.) 73 Pac. 772; Remington v. Fidelity and Deposit Co., 27 Wash. 429, 67 Pac. 989; Grafton v. Hinkley (Wis.) 86 N. W. 859; See, also, 1 Joyce on Insurance, par. 273.

The plaintiff in error would be held to a strict compliance with the terms of its surety bond and the terms of the lease. It is provided in paragraph 4 of the lease as follows:

"The failure of the lessee to pay such rental before the expiration of 15 days after it becomes due at the end of any yearly period, during which a well has not been completed as prescribed herein, shall be a violation of one of the material and substantial terms and conditions of this lease, and be cause for cancellation of such lease under paragraph numbered 9 hereof."

The question is, Do the above provisions as to forefeiture have the effect of defining all the terms and conditions of cancellation in the lease and regulations, material and substantial, and does failure to comply with any of the said terms, or in lieu thereof an equitable showing of reasons why they cannot comply, all done within the period of cancellation, at the option of the government, shut out all pleas of avoidance? We do not think this is a question we are called upon to answer, under the state of the record, and for the reasons hereinafter stated.

The obligee named in said bond was the government of the United States, and the court will take judicial knowledge of the fact that the bond was taken to safeguard the interests of their wards, the full-blood lessors named in the leases. The terms of this obligation are very specific and unmistakable in their force and effect. Did the lessee, the Ingram Oil Company, comply with the terms of section 7 of the leases and requirements of the department, as to terms of cancellation? It is admitted that the lessee did pay to the Union Agency in Muskogee the one dollar cancellation fee within the time required before the accrual of the penalties in an effort to cancel, and did express an intention to the department to cancel the leases as to three of the said leases, namely, the Thomas Kelly lease, the John Tiger lease, and the Nicey Tiger lease, but did not take the necessary steps toward cancellation as to the Henry Brown lease within the period. It appears from the admitted statement of facts that the leases were not recorded in the counties in which the lands are situated; therefore the necessity of delivering to the Union Agency recorded releases did not exist. However, the regulations of the Department of the Interior, and which were binding upon the lessee, contained the further requirements:

"Where lessee makes an application for the cancellation of an approval lease all royalties or rentals due up to the date of application for cancellation must be paid before such application will be considered, and the parts of the lease delivered to the lessor and lessee shall be surrendered."

A portion of the above rule or requirement states as follows:

"The parts of the lease delivered to the lessor and lessee shall be surrendered."

This, no doubt, has reference to the original quadruple copies that are required and taken by the department. The full-blood

departmental oil leases are taken in quadruple. Two copies are retained by the department and one copy sent to the lessee and one copy to the lessor, and these copies are original quadruples and capable of recordation.

This court cannot say that this requirement for the surrender of the parts of the leases delivered to the lessor and lessee is an unreasonable one. The probable purpose of the department in making this requirement for cancellation was that it have returned to its possession everything that might cloud the titles of the lessors, their wards. Notwithstanding the fact that the record shows that no leases had been recorded, yet, in the event that the lessee failed to return copies of said leases, it might have placed the same upon the record, even after the attempted cancellation, and thereby clouded the title of the lessor.

We do not feel, under the state of this record, that it is incumbent on this court to go into the realm of speculation and draw inferences from this record, that might justify the defendants in error in their failure to comply with the strict terms of the contract. They have given the court no assistance. They have failed to file any brief, and there is nothing in the record to show that they were justified, either by inability to comply or by giving other equitable reasons as to why they did not comply with the specific terms of their agreement as to canceling the leases. The plaintiff in error has filed a brief. The brief of the plaintiff in error sets out grounds that reasonably sustain its assignments of error. The defendants in error have offered no excuse for their failure to file a brief, and the record does not show that they have made any appearance in this court whatever. The rule, uniformly followed by this court in the event that the plaintiff in error files a brief, and defendant in error files no brief and fails to give any excuse for such failure, is stated in a recent opinion of this court (Board of Commissioners of Grady County et al. v. May Lenochan et al., 80 Okla. 169, 195 Pac. 116) by Mr. Justice Pitchford, as follows, to wit:

"The defendants in error have failed to file any brief and have not offered any excuse for such failure. This court in an unbroken line of decisions has held that where a plaintiff in error has completed his record and filed it in the Supreme Court and has served and filed a brief in compliance with the rules of the court, and the defendant in error has neither filed a brief nor offered any excuse for such failure, the Supreme Court is not required to search the record to find some theory upon which the judgment below

may be sustained; and, where the brief filed appears reasonably to sustain the assignments of error, the court may reverse the case in accordance with the prayer of the petition of plaintiff in error. See Loveland v. Tant, 75 Okla. 12, 181 Pac. 302; General Bonding & Casualty Company v. Oklahoma Fire Insurance Company, 75 Okla. 55, 181 Pac. 303."

The judgment of the trial court is, therefore, reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

HARRISON, C. J., and PITCHFORD, JOHNSON, MILLER, and NICHOLSON, JJ., concur.