## UNITED STATES FIDELITY & GUARANTY CO. v. GILLAM.

No. 12267—Opinion Filed Oct. 23, 1923.

### 1. Indians—Departmental Oil Lease—Cancellation—Requisites.

Under a cancellation provision of a departmental oil and gas lease, where said lease has not been recorded in the county in which the land covered by the lease is situated, the execution and delivery to the Superintendent of the Five Civilized Tribes of a release of the lease and expression of

intention to cancel does not constitute a cancellation, unless, within the period of cancellation the ·payment of a cancellation fee of $1 required by the Secretary of the Interior is complied with; and such provisions are held not to be unreasonable requirements.

**2. Same.**

Under a cancellation provision of a departmental oil and gas lease, where said lease has been recorded in the county in which the land covered by the lease is situated, payment of the cancellation fee · of $1 and expression of intention to cancel does not constitute a cancellation, unless, within the period of cancellation, the provisions relating to delivery of recorded releases be complied with; and such provisions are held not to be unreasonable requirements.

**3. Same—Bond 'to Government—Payment of Rentals by Surety.**

A surety company, surety on a bond guaranteeing compliance with the terms of a departmental oil and gas lease, made to the United States government, is justified in paying the demands of the government of rentals and charges claimed by the government under the terms of an oil lease, where the leasee has failed to comply strictly with the terms provided in the lease and the regulations of the Department of the Interior for cancellation, since the bonding company for hire is not like an accommodation surety, dealing at arm's length with its obligee, but is held to a strict compliance with the terms of its contract.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County; Cham Jones, Judge.

Action by the United States Fidelity & Guaranty Company against J. Robert Gillam. Judgment for defendant. Plaintiff brings error. Reversed.

William Hutchinson and Eddleman & Sneed, for plaintiff in error.

Wm. G. Davisson and Brett & Brett, for defendant in error.

Opinion by FOSTER, C. This action was commenced on the 8th day of August, 1916, in the district court of ·Carter county. Okla., by the United States Fidelity & Guaranty Company, plaintiff in error, plaintiff below, against J. Robert Gillam, defendant in error, defendant below, to reimburse it for certain sums of money which it had paid out as surety for the defendant in error under a collective oil and gas lease bond executed by the defendant in error to the United States of America. The parties will be hereinafter referred to as they appeared in the court below.

There were ten counts in the petition, but the seventh, eighth, and ninth counts were dismissed by plaintiff at the trial. The first four counts sought a recovery for annual rentals and advance royalties paid by the plaintiff to the United States government, which it is alleged became due and payable under the terms of departmental oil and gas leases executed by Mattie Annkwiatubbee, Wash Foster. Noel James, and Harrison Porter, members of the Five Civilized Tribes of Indians, and which it alleged the defendant refused and neglected to pay.

The fifth and sixth counts sought a recovery of premiums on said bond· for the entire term of any lease covered by said bond, aggregating $300.

The tenth count sought a recovery for an attorney fee of $350. which it is alleged plaintiff expended in the employment of counsel to represent it before the Department of the Interior and in the courts.

The answer of the defendant admitted the execution of the application for the bond and the bond itself, but denied all other allegations of the petition and alleged that he executed a release of the several oil and gas leases mentioned in the first four counts of plaintiff's petition prior to the date on which rentals and advance royalties became payable under the terms of said leases, and that if plaintiff had paid the United States government the annual rentals and royalties reserved in said leases. it did so voluntarily and without any liability therefor on the part of the defendant.

Answering the fifth and sixth counts of plaintiff's petition, defendant alleged that premiums were due on said bond for such period only as defendant might be liable under the terms of the leases, and that the leases were released on May 21, 1915; that he had tendered to the plaintiff all the premiums earned up to the 21st day of May, 1915. and had kept the tender alive. Defendant denied liability for attorney fees, alleging that no cause of action existed in favor of the plaintiff and against the defendant in which attorney fees could have occurred.

A jury was impaneled to try the case on the 8th day of November, 1920, but at the conclusion of all the testimony in the case, the court withdrew the case from consideration by the jury, discharged said jury, and

entered a general judgment for the defendant. From the judgment so rendered, the plaintiff appeals and assigns the following errors:

(1) Said court erred in withdrawing the case from the jury upon the trial thereof, over the objection of plaintiff.

(2) Said court erred in rendering judgment in favor of the defendant against the plaintiff.

(3) Said court erred in overruling the motion of plaintiff for a new trial.

The first assignment of error is nowhere mentioned or discussed by the plaintiff as a ground for reversal, and we will, therefore, treat this assignment of error as abandoned, and dispose of the case as any law case, regularly tried to the court without the intervention of a jury, should be disposed of upon appeal.

We agree with the trial court that at the conclusion of the testimony it was apparent no conflict in the evidence had developed and that the only question remaining in the case was to properly apply the law to the facts proven.

The question for our determination is whether or not the trial court erred in finding for the defendant upon the uncontroverted evidence in the record.

An examination of the evidence discloses that the leases taken by the defendant were approved by the Secretary of the Interior on the following dates:

The Mattie Annkwiatubbee lease on January 14, 1914; Wash Foster lease on January 14, 1914; Noel James lease May 2, 1914; and the Harrison Porter lease on May 2, 1914; and that these leases were taken by the defendant pursuant to a collective oil and gas lease bond in the sum of $15,000, payable to the United States of America, executed by the defendant, as principal, and the plaintiff as surety on November 19, 1913. The pertinent provisions of said leases are as follows:

"4. The lessee shall exercise diligence in sinking wells for oil and natural gas on land covered by this lease and shall drill at least one well thereon within one year from the date of approval of this lease by the Secretary of the Interior or shall pay to said Superintendent for the Five Civilized Tribes, Muskogee, Oklahoma, for the use and benefit of the lessee, for each whole year the completion of such well is delayed after the date of such approval by the Secretary of the Interior, for not to exceed ten years from the date of such approval, in addition to the other considerations named herein, a rental of one dollar per acre, payable annually; and if the lessee shall fail to drill at least one well within any such yearly period and shall fail to surrender this lease by executing and recording a proper release thereof and otherwise complying with paragraph numbered 7 hereof on or before the end of any such year during which completion of such well is delayed, such failure shall be taken and held as conclusively evidencing the election and covenant of the lessee to pay the rental of one dollar per acre for such year and thereupon the lessee shall be absolutely obligated to pay such rental. * * *

"7. The lessee may at any time, by paying to the Superintendent for the Five Civilized Tribes, Muskogee, Oklahoma, all amounts then due as provided herein and the further sum of one dollar, surrender and cancel this lease and be relieved from all further obligations or liability thereunder: Provided, if this lease has been recorded lessee shall execute a release and record the same in the proper county recording office. * * *

"8. This lease shall be subject to the regulations of the Secretary of the Interior, now or hereafter in force, relative to such leases, all of which regulations are made a part and condition of this lease. * * *"

The condition of the bond in question is as follows:

"The condition of this obligation is such that whereas the above bounden J. Robert Gillam, as principal, has heretofore and may hereafter enter into oil and gas mining leases, or become owner or interested by assignment or drilling contract in leases, with allottees, members of the Five Civilized Tribes in Oklahoma, of various dates and periods of duration, covering the lands described in such leases, which leases have been or may hereafter be approved by the Secretary of the Interior, and the identification of which herein is expressly waived by both the principal and surety hereto.

"Now if the above bounden J. Robert Gillam shall faithfully carry out and observe all the obligations assumed, affecting the interests of the said allottee in said indentures of lease, assignments, or drilling contracts, to which he is now or may hereafter become a party, and shall observe all the laws of the United States and regulations made or which shall be made thereafter for the government of trade and intercourse with Indian tribes, and all regulations that have been or shall hereafter be lawfully prescribed by the Secretary of the Interior relative to oil and gas mining leases executed by allottees of the Five Civilized Tribes, and the development thereof, and shall in all particulars comply with the provisions of said leases and such regulations then this obligation shall be

null and void; otherwise to remain in full force and effect."

Section 40 of the regulations concerning the leasing of lands promulgated by the authority of the Secretary of the Interior, introduced in evidence, is as follows:

"40. Where a lessee makes an application for the cancellation of an approved lease, all royalties or rentals due up to the date of the application for cancellation must be paid before such application will be considered, and the parts of the lease delivered to the lessor and the lessee should be surrendered. (Amended by departmental order of January 11, 1909. which provides that the lessee and surety shall be held for payment of all royalties and rentals due to the date of completion of application for cancellation, which, if the lease has been recorded, also includes filing of a properly executed and recorded release of record and payment to Superintendent Union Agency $1 cancellation fee if lease so stipulates.)"

The evidence also discloses that the Mattie Annkwiatubbee and the Wash Foster leases were not recorded by the lessee in the county in which the land was located, but that the Harrison Porter and Noel James leases were so recorded. Under the terms of the Mattie Annkwiatubbee and Wash Foster leases, the annual rental and advance royalty became payable on January 14, 1915, and under the Noel James and Harrison Porter leases on May 2. 1915, and under the regulations promulgated by the Secretary of the Interior, recorded releases of the Harrison Porter and Noel James leases were required to be filed to complete the cancellation.

According to the testimony of the defendant, he sent the releases of the Mattie Annkwiatubbee and Wash Foster leases on December 19, 1914, but the cancellation fee was not sent until January 14. 1915, and did not reach the Department until January 16, 1915, two days after the date on which the rentals and royalties became due.

With respect to the Noel James and Harrison Porter leases, the cancellation fee together with the original leases reached the office of the Superintendent of the Five Civilized Tribes on April 26, 1915, but defendant does not claim that he sent recorded releases until May 29, 1915, some 27 days after the due date of the rentals and royalties.

A determination of the issue of law involved in this case turns upon the right of the United States government for the benefit of allottees of the Five Civilized Tribes

to the payment of demands under the leases designated above. If, under the terms of the leases, the rentals and advance royalties were legal and subsisting demands against the defendant, as lessee, then it is our judgment that the plaintiff was justified in paying the demands of the government and should have recovered, in the court below, the amounts so paid.

In the case of Cohn v. Clark, 48 Okla. 500, 150 Pac. 467, our court said in the third paragraph of the syllabus:

"An oil lease provided that the lessee should commence operations in drilling for oil by January 1, 1910, or thereafter pay to the lessor $1 per acre per annum until a well was drilled, or the lease thereafter should be null and void. Held, that upon a failure to begin operations by drilling for oil, the lessor was entitled to the stipulated rental until a well was drilled or until the lease was terminated, or canceled, under the surrender clause in the contract."

The defendant could escape liability for the demands of the government only by surrendering and canceling the Mattie Annkwiatubbee and Wash Foster leases on or before January 14, 1915, and the Noel James and Harrison Porter leases on or before May 2, 1915, in the manner specified in said leases. The defendant, as lessee, unconditionally agreed in the lease that his failure to so surrender should be "taken and held as conclusively evidencing the election and covenant of the lessee to pay the rental of one dollar per acre for such year and thereupon the lessee should be absolutely obliged to pay such rental"

The lessor in the instant case has exercised its right to enforce collection of the rentals and advance royalties and the plaintiff surety company, upon demand, has paid them. In the absence of fraud or mistake, neither of which occurs herein, the defendant may not be relieved from the consequences of a plain contract, entered into by him with the lessor, where it is admitted that he did not complete the cancellation of the leases under the terms of the lease itself and of the regulations promulgated by the Secretary of the Interior, to which he agreed, before the due date of the second year's rental and royalties.

As was said by the Supreme Court in the case of Cohn v. Clark, supra:

"In the contract under consideration, it will be presumed that the parties thereto worded the same so that it expressed the actual contract which they intended to make, and it is not for this court, by judicial interpretation, to add to and take from the

same, but to construe it as it actually is, and we have no power to relieve either therefrom, even though we might conclude that its terms are greatly to the advantage of one and much to the detriment of the other, in the absence of fraud or mistake, neither of which occurs herein, either in the pleadings or in the proof. We have no authority in actions at law, as in the case at bar, to inquire whether the contract is fair and equitable, but can look only to the terms of the contract and construe the same according to the intendment of the parties, as far as the same can be arrived at by placing the commonly accepted judicial construction and acceptation of the language used therein."

The action in the instant case is purely an action at law, and there is no intimation in the pleadings or the evidence adduced of any inequitable conduct on the part of the lessor in the procurement of the lease sufficient to warrant the exercise, by the court, of its equity power. That the defendant may have acted in good faith in attempting to cancel the leases before the due date of the rentals and royalties can have no controlling weight under the circumstances presented by this record. There is no evidence whatever in the record to justify the conclusion that the defendant had been overreached or that his belated attempt to complete the cancellation of these leases was the result of any inequitable conduct on the part of the lessor. Nor can the act of Mr. Kelsey, the Indian Agent, in retaining the cancellation fees be regarded as an estoppel upon the part of the government in bar of its right to enforce payment of the rentals and royalties due. The extent of his act could go no further in any event than to prevent the government from enforcing the collection of the rentals and royalties for the year succeeding.

This being an action at law and there being no ground upon which the court could interfere on equitable grounds to relieve the defendant from the operation and effect of the lease in controversy, this court is obliged to follow the case of Massachusetts Bonding & Ins. Co. v. Lewis et al., 80 Okla. 187, 195 Pac. 494, where the court, in the first paragraph of the syllabus, says:

"Under a cancellation provision of a full-blood oil lease, payment of the cancellation fee of one dollar and expression of intention to cancel does not constitute a cancellation, unless, within the period of cancellation, the provisions relating to delivery of recorded releases and to surrender of parts of leases be complied with; and such provisions are held not to be unreasonable requirements."

Again, in the second paragraph:

"A surety company, surety on a bond guaranteeing compliance with the terms of a full-blood oil and gas lease, made to the United States government, is justified in paying the demands of the government of rentals and charges claimed by the government under the terms of an oil lease, where the lessee has failed to comply strictly with the terms provided in the lease and the regulations of the Department of the Interior for cancellation, since a bonding company for hire is not like an accommodation surety, dealing at arm's length with its obligee, but is held to a strict compliance with the terms of its contract."

In the above case the court did not lay down a rule of law which would make it impossible for a lessee in a departmental oil and gas lease to defeat an action by the surety on its bond for rentals which had been paid to the government, and in the instant case we are not to be understood as holding that there could not be circumstances which would justify a lessee in a departmental oil and gas lease in refusing payment of rentals and royalties to the government. It is sufficient to say that upon the face of the record before us, no facts or circumstances are disclosed sufficient to justify such refusal.

The judgment of the trial court is reversed, with directions to enter judgment for plaintiff for the full amount claimed in the first four counts; for the sum of $206.25, under the fifth and sixth counts; and for the sum of $250, under the tenth count; making a total of $1,116.00.

By the Court: It is so ordered.